Frank Winston BAITY, Appellant,

v.

The STATE of Texas, Appellee.

No. 42740.

Court of Criminal Appeals of Texas.

April 22, 1970.

Guy H. McNeely, R. M. Helton, Wichita Falls, for appellant.

Jim Phagan, Dist. Atty., Wayne Hughes, Asst. Dist. Atty., Wichita Falls, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Judge.

The offense is burglary of a coin operated machine; the punishment, enhanced under the provisions of Article 63, Vernon's Ann.P.C., life.

The State's evidence reflects that on March 3, 1969, around 4:56 a. m., Officer Jesse Mathis of the Wichita Falls City Police, an officer with 13 years' experience, was patrolling in the downtown business area on a routine building check. While in an alley next to the Piccadilly Cafeteria he observed a man enter the alley about sixty feet from his patrol car with its lights on, then suddenly turn back out of the alley. His suspicions were aroused by such furtive movement in the early morning hours. He sped up his vehicle and observed the man on Eighth Street "walking fast with his coat pulled up tight * * * walking

real fast." Officer Mathis followed to determine who it was. He then recognized the appellant whom he knew personally and whom he knew had "a record of many arrests" for theft and burglary. At this point the officer's suspicions were thoroughly aroused. As he drove near the appellant he called out "Hey, stop" or "Come here." The appellant at this point stopped and turned, at which time Mathis observed a nail bar[1] protruding from the appellant's coat. Appellant then approached the officer's patrol car and the officer noticed he had possession of some other object under his coat. When the officer inquired what it was the appellant replied it was a coin or money box. After some investigation the officer took the appellant to the Piccadilly Cafeteria where it was determined there were pry marks on a coin operated cigarette machine which had been broken and entered with the coin box missing. The coin box taken from the appellant fit the machine and contained over $30.00.

The owner of the machine testified he had not given anyone permission to break and enter such machine and take money therefrom. L. J. Russell, Chef at the Piccadilly, related that the appellant, a former employee, had appeared at the cafeteria after he had gone to work on the morning in question and before the cafeteria opened and prior to the time of the arrest. He testified appellant stated he had come to pay a $1.00 loan to Russell; that when Russell reminded him he had already repaid $1.00 the appellant left; that when he (Russell) entered the building he did not notice the cigarette machine in the condition in which it was later discovered.

In his first ground of error appellant contends the court erred in admitting into evidence Officer Mathis' testimony that he observed the appellant in possession of a crow or nail bar and a coin box and that appellant had stated he had a coin or money box. This contention is based on the claim that appellant's warrantless arrest was without probable cause and that the search incident thereto was illegal. Appellant urges the arrest occurred the moment that he was stopped by the officer and at that time the officer had no knowledge of any crime having been committed. The State, relying upon the officer's testimony, contends the arrest did not occur until after the officer determined the money box did not belong to the appellant, and that what occurred earlier did not result from a custodial interrogation.

In Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, the Supreme Court considered "serious questions concerning the role of the Fourth Amendment in the confrontation on the street between the citizen and the policeman investigating suspicious circumstances." There the Court held that under certain circumstances the police may seize a person and subject him to a limited search for weapons even if there is no probable cause for arrest. While no limited search or "frisk" for weapons is here involved and our scope of inquiry need not extend that far, what was said in Terry is most important.

The majority opinion stated:

"One general interest is of course that of effective crime prevention and detection; it is this interest which underlies the recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even *though there is no probable cause to make an arrest.* (emphasis supplied)

\* \* \* \* \* \*

"And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience."

---

1. Sometimes referred to in the record as a crow bar.

Mr. Justice Harlan, concurring, wrote:

"Officer McFadden had no probable cause to arrest Terry for anything, but he had observed circumstances that would reasonably lead an experienced, prudent policeman to suspect that Terry was about to engage in burglary or robbery. His justifiable suspicion afforded a proper constitutional basis for accosting Terry, restraining his liberty of movement briefly, and addressing questions to him, and Officer McFadden did so."

And Mr. Justice White in his concurrence said:

"There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets. Absent special circumstances, the person approached may not be detained or frisked but may refuse to cooperate and go on his way. However, given the proper circumstances, such as those in this case, it seems to me the person may be briefly detained against his will while pertinent questions are directed to him. Of course, the person stopped is not obliged to answer, answers may not be compelled, and refusal to answer furnishes no basis for an arrest, although it may alert the officer to the need for continued observation."

Of course, as pointed out in Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917, a "police officer is not entitled to seize and search every person whom he sees on the street or of whom he makes inquiries. Before he places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so." In justifying his actions the police officer must be able to point to "specific * * * facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry v. Ohio, supra.

■ It is clear though that circumstances short of probable cause for an arrest may justify temporary detention for investigation and questioning. People v. Solomon, 1 Cal.App.3d 907, 82 Cal.Rptr. 215.

"The accepted guideline for temporary stopping for questioning is whether a reasonable man in the same circumstance would believe such conduct necessary to a proper discharge of duties. * * * The strength of the information an officer should have to engage in questioning is necessarily much less than it would be for an arrest. (People v. Currier (1965) 232 Cal.App.2d 103, 106, 42 Cal.Rptr. 562)." People v. Stephenson, 74 Cal. Rptr. 504.[2]

In the case at bar the experienced officer observed in the downtown business area a series of acts in the early morning hours, each of them perhaps innocent in itself but which when taken together with the officer's previous knowledge of the appellant warranted further investigation. In fact, it would have been poor police work for the officer to have failed to investigate appellant's behavior further. Surely it cannot be argued that a police officer should refrain from making any investigation of suspicious circumstances until such time as he has probable cause for arrest.

■ We are of the opinion that it was reasonable under the circumstances presented for Officer Mathis to stop and briefly interrogate the appellant. See Commonwealth v. Matthews (Mass.), 244 N.E.2d 908; People v. Murray, Cal.App., 75 Cal.Rptr. 625. What the officer saw in plain view during such process, the nail bar and coin box, was clearly admissible and not obtained as a result of any search. See Commonwealth v. Quish (Mass.), 249 N.E.2d 597.

2. In People v. Manis, 268 Cal.App.2d 653, 74 Cal.Rptr. 423, the circumstances permitting temporary detention were outlined.

Still further, attention is called to Article 14.03, Vernon's Ann.C.C.P., 1967, which provides:

"Any peace officer may arrest, without warrant, persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony or breach of the peace, or threaten, or are about to commit some offense against the laws."

■■ An arrest made under the provisions of such article would authorize a search incident thereto which would be valid. Carter v. State, Tex.Cr.App., 445 S.W.2d 747; Sanchez v. State, Tex.Cr. App., 438 S.W.2d 563; Chambler v. State, Tex.Cr.App., 416 S.W.2d 826; Roach v. State, Tex.Cr.App., 398 S.W.2d 560; Laube v. State, Tex.Cr.App., 417 S.W.2d 288; Denham v. State, Tex.Cr.App., 428 S.W.2d 814. In light of the record the State also urges the complained of statement, if in fact made after an arrest, was admissible as part of the res gestae of the offense and arrest. See Article 38.22, V. A.C.C.P.[3] We need not decide that question for the appellant, testifying in his own behalf, related on direct examination that he had stated to the officer he had a money box in his possession and that it had come from the Piccadilly Cafeteria. Appellant cannot complain of the improper admission of testimony which he later voluntarily offers himself and expounds upon. Cook v. State, Tex.Cr.App., 409 S.W.2d 857. Appellant, who admitted a number of prior convictions for felony theft and burglary, testified he had gone to the cafeteria to repay a loan and upon leaving saw the coin box on the floor under a child's high chair and had taken it. He admitted the theft but denied he broke and entered the coin operated machine or had in his possession a nail bar at the time of his arrest.

Ground of error #1 is overruled.

■ Next, appellant contends the court erred in charging the jury at the guilt stage of the proceedings as to the penalty provided by law for the instant or primary offense. He acknowledges the same would have been proper under the provisions of Article 37.07, V.A.C.C.P., 1965, but calls attention to the fact that the requirement that the jury be informed of the possible punishment at the guilt stage of the trial was eliminated by the 1967 amendment to such statute. We find no written objection or special requested charge filed in accordance with Articles 36.14 and 36.15, V.A.C.C.P., and nothing therefore is presented for review. It is again noted that despite the provisions of Article 40.09, Sec. 4, V.A.C.C.P., objections and special requested charges dictated to the court reporter are not a sufficient compliance with Articles 36.14 and 36.15, supra. Smith v. State, Tex.Cr.App., 415 S. W.2d 206; Seefurth v. State, Tex.Cr.App., 422 S.W.2d 931; Bryant v. State, Tex.Cr. App., 423 S.W.2d 320; Brock v. State, Tex.Cr.App., 424 S.W.2d 436; Bass v. State, Tex.Cr.App., 427 S.W.2d 624; Lusk v. State, Tex.Cr.App., 432 S.W.2d 923; Black v. State, Tex.Cr.App., 432 S.W.2d 951; David v. State, Tex.Cr.App., 453 S. W.2d 172. Even if there had been a proper objection, no reversible error would have been presented. See Watts v. State, Tex.Cr.App., 430 S.W.2d 200.

Ground of error #2 is overruled.

Lastly, appellant contends there are variances between the prior convictions alleged in the indictment for enhancement and the proof offered.

■ As best we can tell, assuming the ground of error complies with Article 40.-09, Sec. 9, V.A.C.C.P., appellant contends the indictment alleged the first prior conviction occurred in the 89th District Court

3. In Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, it was said: "General on the scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding." Cf. Article 2.24, V.A. C.C.P.

of Wichita County and proof showed the indictment in that cause was returned into the 30th District Court of the same county. The judgment and the sentence and all other evidence reflect the conviction occurred in the 89th District Court. The Clerk further testified there was an order of the District Courts of Wichita County that any Judge could sit for any other Judge in disposing of cases. The contention is without merit.

■ Appellant further complains the indictment alleged the date of the second prior conviction as February 1, 1961, and proof showed the year "19561." The body of the judgment and all other evidence supports the allegation. Appellant apparently relies on the typing inserted in the printed form of the sentence reflecting the date thereof as "February 1, 19561." It is obvious that the typist did not clearly strike out the printed "5" when typing "61." No variance is presented. See Matula v. State, Tex.Cr.App., 390 S.W.2d 263; 1 Branch's Anno.P.C., 2nd ed., Sec. 697.1.

Ground of error #3 is overruled.

The judgment is affirmed.