**Raymond G. CENICEROS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 52528.

Court of Criminal Appeals of Texas.

Feb. 16, 1977.

On Rehearing May 18, 1977.

Bruce J. Ponder, El Paso, for appellant.

Steve W. Simmons, Dist. Atty. and William J. Ellis, Thomas C. Roepke, Asst. Dist. Attys., El Paso, Jim D. Vollers, State's Atty. and David S. McAngus, Asst. State's Atty., Austin, for the State.

OPINION

GREEN, Commissioner.

In a trial before a jury appellant was convicted of possession of heroin. Punishment was assessed at five years.

In appellant's sole ground of error he contends that the trial court erred in overruling his motion to suppress evidence "because there was not sufficient probable cause on the part of the arresting officer to stop and investigate the appellant."

Prior to the introduction of evidence of the heroin, the court conducted a hearing in the absence of the jury on appellant's motion to suppress such evidence. Officer Nunez of El Paso Police Department testified substantially as follows:

About 10:20 a.m. on June 19, 1975, while Nunez was on regular patrol duty in his police car in El Paso, he noticed four men standing together on the sidewalk at the intersection of Missouri and Randolf Streets, a residential area in El Paso. Due to a number of recent burglaries in the neighborhood, Nunez, after passing the men, turned his car around, stopped it, and approached the men. He started talking to them "to see if they had any business in the area." Noting that one of the men, identified as appellant, appeared to be shaking and nervous, he asked for identification of each of them. The men "started to pull out their wallets to get some ID." As appellant was "thumbing" through his wallet, a piece of tin foil and a pawn shop ticket fell from it to the sidewalk. Nunez knew from his experience as a policeman that heroin was frequently packaged in this manner. He picked up the foil, opened it, and found a brown powdery substance which appeared to him, based on his experience, to be her-

oin. He then arrested appellant and the other men. Examination by a chemist proved this powder to be heroin.

Testimony of one of the men with appellant conflicted with that of Nunez. Victor Rodriquez, who at the time was a resident of a "halfway" house on parole from a federal narcotic conviction, testified that when the officer approached them he immediately ordered them to place whatever was in their pockets on the top of the police car. He stated that he did not see anything fall from appellant's wallet, and did not see Nunez reach down and get anything from the sidewalk.

The court, who at the hearing was the trier of facts, overruled the motion to suppress, and permitted the officer to testify before the jury of finding the heroin as above stated.

In *Baity v. State,* Tex.Cr.App., 455 S.W.2d 305, we quoted as follows from the majority opinion and Justice White's concurring opinion in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889:

"The majority opinion stated:

" 'One general interest is of course that of effective crime prevention and detection; it is this interest which underlies the recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior *even though there is no probable cause to make an arrest.* (emphasis supplied)'

" *   *   *

" 'And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.'

"Mr. Justice Harlan, concurring, wrote:

" 'Officer McFadden had no probable cause to arrest Terry for anything, but he had observed circumstances that would reasonably lead an experienced, prudent policeman to suspect that Terry was about to engage in burglary or robbery.

His justifiable suspicion afforded a proper constitutional basis for accosting Terry, restraining his liberty of movement briefly, and addressing questions to him, and Officer McFadden did so.'

"And Mr. Justice White in his concurrence said:

" 'There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets. Absent special circumstances, the person approached may not be detained or frisked but may refuse to cooperate and go on his way. However, given the proper circumstances, such as those in this case, it seems to me the person may be briefly detained against his will while pertinent questions are directed to him. Of course, the person stopped is not obliged to answer, answers may not be compelled, and refusal to answer furnishes no basis for his arrest, although it may alert the officer to the need for continued observation.' "

In the instant case, Nunez, acting from his experience as a police officer and from his knowledge that a number of recent burglaries had occurred in the area, violated no constitutional rights of appellant in approaching and engaging in conversation. Appellant and his companions were not stopped by the officer; they were standing still when he first saw them, and when he approached them. When Nunez noticed that appellant appeared nervous as he approached, the evidence does not disclose that he placed appellant or his companions in any kind of restraint or detention. As Justice White stated in *Terry v. Ohio,* supra, appellant could "refuse to cooperate and go on his way." However, when the wrapped foil paper fell from appellant's wallet, and the officer recognized it as the type of wrapper often used to contain heroin, he was justified in securing it and making further investigation. See Art. 14.-03, V.A.C.C.P. It is a well recognized rule that when contraband is thrown, dropped, or placed away from the person of accused in a public place, the recovery thereof does not constitute a search and the evidence is

**52** ▬

admissible. *Tatum v. State,* Tex.Cr.App., 505 S.W.2d 548; *Gomez v. State,* Tex.Cr. App., 486 S.W.2d 338 and authorities there cited; *Baity v. State,* supra.

The court did not err in overruling the motion to suppress and admitting the evidence relative to the seizure of the heroin.

The judgment is affirmed.

Opinion approved by the Court.

ROBERTS, Judge, dissenting.

The facts are sufficiently stated by the majority, but I further note the following: that the "experience" of the arresting officer was of some seven months; that one of the appellant's companion's parents lived in the neighborhood where they were questioned; that the arresting officer's testimony was contradictory as to when the appellant became nervous, as the officer approached him or only after he asked for his identification; that the fact that the officer approached appellant because of recent burglaries in the area was brought out by the trial court's examination of the officer at the motion to suppress;[1] that the officer testified that the appellant and his companions were not holding any tools, ropes or crowbars, and were, in fact, empty-handed; that the arresting officer testified that he did not suspect the appellant and his companions to have committed a crime; that the arresting officer stated unequivocally at least four times that the appellant and his companions were doing nothing suspicious.

This case presents the question of whether the reasonableness of a temporary detention for investigative purposes, what we have formerly denominated as a "lesser intrusion upon the personal security of an individual,"[2] should be tested by the application of Fourth Amendment principles and Article I, Section 9 of the Constitution of this State when such investigation is merely a request for identification. I would hold that it should be so tested; that the instant investigative detention was unreasonable in light of the facts; and that the evidentiary fruit obtained from such unreasonable investigative detention was improperly admitted into evidence.

A recent federal decision focuses on the exact problem that we face in the case at bar: the reasonableness of the request for identification. In *United States v. Salter,* 521 F.2d 1326 (2nd Cir. 1975), Judge Friendly, speaking for a unanimous court, stated that a routine request for identification is allowable once an otherwise lawful stop for investigative purposes has taken place.

"Once a lawful stop for investigative purposes is under way, it is mere routine for an officer to ask for identification, see *United States v. Lincoln,* 494 F.2d 833, 838 (9th Cir. 1974). . . . Such a request is relatively non-intrusive, and there are important reasons why an officer needs to obtain a correct identification. . . . an officer may need to know a person's identity so as to be able to contact him at a later date. (Citation). Naturally, there is a possibility of harassment in even routine requests for identification, but there are too many legitimate uses not to allow it *once an otherwise lawful stop has taken place.* (Citation)" (Emphasis added).

This is a reasonable view. Part and parcel of practically every temporary detention for investigation is the request for identification. It serves many purposes, and efficient law enforcement requires it. However, we should require that quantum of justification necessary for a lawful investi-

---

1. At the motion hearing, when both sides had initially finished questioning the arresting officer who had alluded to "burglaries in the area," the following occurred:

   "THE COURT: The Court has some questions.

   \* \* \* \* \* \*

   "THE COURT: Did I understand you to say there was a rash of burglaries in that neighborhood?

   "[OFFICER]: Yes, sir.
   "THE COURT: Is that the reason you went over to these men?
   "[OFFICER]: Yes, sir.
   "THE COURT: You didn't tell the attorney that see."

2. *Ablon v. State,* 537 S.W.2d 267, 269 (Tex.Cr. App.1976) (and cases there cited).

gative detention before we should sanction any of its incidents.

In *Brown v. State,* 481 S.W.2d 106 (Tex. Cr.App.1972), we stated that:

> "The basic purpose of the Fourth Amendment is to safeguard the privacy and security of individuals against arbitrary invasions by government officials. (Citations). Such an intrusion may be justified upon a showing that the facts of a case presented any one of three classes of probable cause. These are probable cause to arrest, probable cause to search and *probable cause to investigate.*
>
> \* \* \* \* \* \*
>
> ". . . Probable cause for an officer to detain a person temporarily for investigative purposes exists where the circumstances reasonably indicate that that particular person either has or is preparing to commit a crime. (Citations).
>
> "The inarticulate hunch, suspicion, or good faith of an arresting officer is insufficient to constitute probable cause under any of the three above named classes. (Citations). For '[i]f subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be "secure in their persons, houses, *papers, and effects,*" only in the discretion of the police.'" (Citation). (Emphasis added).[3]

In the case at bar, we do not have circumstances which reasonably indicate that the appellant had committed or was preparing to commit a crime. The officer testified that he did not suspect the appellant and his companions to have committed a crime. Indeed, we do not even have the insufficient "inarticulate hunch, suspicion, or good faith" of the arresting officer because he stated unequivocally at least four times that appellant and his companions were doing nothing suspicious.

The record does not reflect how many recent burglaries had been committed in the neighborhood. Even so, the fact that criminal activity is more likely in one geographical area than another does not by itself satisfy the standards required for an interrogatory stop. *United States v. Brignoni-Ponce,* 422 U.S. 873, 882–886, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *United States v. Nicholas,* 448 F.2d 622, 624 (8th Cir. 1971); *United States v. Davis,* 147 U.S.App. D.C. 400, 458 F.2d 819, 822 (1972); *People v. Oden,* 36 N.Y.2d 382, 385, 368 N.Y.S.2d 508, 329 N.E.2d 188 (1974).

In *Thompson v. State,* 533 S.W.2d 825 (Tex.Cr.App.1976), we quoted from *Wood v. State,* 515 S.W.2d 300 (Tex.Cr.App.1974), and held that:

> ". . . A brief stop of a suspicious individual in order to determine his identity or to maintain status quo momentarily while obtaining more information may be reasonable in light of facts known to the officer at the time." *Thompson,* at 827.

In the case at bar, the officer testified that the appellant was not a suspicious individual. The only fact known to the officer at the time was that there had been several recent burglaries in the neighborhood. In *Thompson,* the facts were that the defendant was walking at 1 a.m. in a high crime area and carrying something which bore obvious evidence that it belonged to someone other than the defendant. In the case at bar, the appellant was standing empty-handed at 10:20 a.m. in the neighborhood where one of his companion's parents lived.[4]

---

**3.** We have recently reiterated this rule concerning the requisite justification for a temporary investigative detention. *Leighton v. State,* 544 S.W.2d 394, 397 (Tex.Cr.App.1976, On Appellant's Motion for Rehearing).

**4.** *Terry, supra,* and *Baity, supra,* relied on by the majority, are also distinguishable as follows:

> In *Terry,* the officer observed the defendant and a companion pace back and forth along an identical route, pausing to stare in the same store window, which they did for a total of about 24 times. Each completion of the route was followed by a conference between the two on a corner, at one of which they were joined by a third man who left swiftly. Because of these facts, the officer testified that he suspected the two men of "casing a job, a stick-up."
>
> In *Baity,* the officer, in early morning hours, observed the defendant who he knew

In *Hernandez v. State,* 523 S.W.2d 410 (Tex.Cr.App.1975), we stated that an "inarticulate hunch" is not sufficient to permit an officer to stop and detain a person for investigation. As noted, we do not even have the "inarticulate hunch" in the instant case. However, we further held in *Hernandez* that:

"So there will be no misunderstanding, we are not holding that a police officer has the right to stop for investigation any person . . .. (Citation). This Court will not, nor should any court, tolerate unfounded detention or harassment of citizens." *Id.,* at 412.

I can see how some would view the request for identification as a relatively minor intrusion into the personal freedom of an individual. However, I cannot accept the reasoning that the individual can remedy an unjustified request by simply denying the request and walking away. *See,* Nicholas, *supra,* at 624. To so hold would be to belie the fact that most ordinary citizens feel they must act with respect for the color of the law. Unjustified requests for individuals to produce their identification should not take place.

Because there was no shred of justification for the arresting officer's demand that the appellant produce his identification, I would hold that this action was unreasonable within the meaning of the Fourth Amendment to the United States Constitution and Article I, Section 9 of the Constitution of this State. The evidence obtained as a result of this unreasonable intrusion should not have been admitted into evidence.[5]

I am as much for effective law enforcement as anyone. However, I am compelled to reason that police intrusions which have no basis other than the unfettered exercise of police discretion are exactly what the Fourth Amendment to the United States Constitution and Article I, Section 9 of the Constitution of this State were designed to protect against. Our streets are traversed not only by the criminal minority but also by the law-abiding majority. The housewife scurrying down the sidewalk to get inside the grocery store before it closes should not have to stop and produce her identification at the whim of an officer; the elderly citizen nervously awaiting the walk-signal in order to cross the street and attend a religious service for which he is already late should not be similarly hampered by the hunch of a patrolman; the couple on a Sunday stroll should not have their conversation interrupted by a policeman who arbitrarily wants them to prove who they are. We are inched closer to the horizon of these occurrences by the decision of the majority today. That is why I respectfully dissent.

PHILLIPS, J., joins in this dissent.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

ODOM, Judge.

On rehearing the appellant argues that our opinion on original submission is in conflict with *Leighton v. State,* Tex.Cr.App., 544 S.W.2d 394; *Smith v. State,* Tex.Cr.App., 542 S.W.2d 420; and *Brown v. State,* Tex.Cr.App., 481 S.W.2d 106. After a review of the facts of this case, we now

---

had a record of many arrests for theft and burglary, enter an alley where the officer was patrolling. He then observed the defendant suddenly turn back out of the alley and walk away rapidly with his coat pulled up tight around him. The officer observed a crowbar and some other object under the defendant's coat.

5. "A ruling admitting evidence in a criminal trial, we recognize, has the necessary effect of legitimizing the conduct which produced the evidence, while an application of the exclusionary rule withholds the constitutional imprima-

tur." *Terry, supra,* 392 U.S. at 13, 88 S.Ct. at 1875.

"Under our decision, courts still retain their traditional responsibility to guard against police conduct which is overbearing or harassing, or which trenches upon personal security without the objective evidentiary justification which the Constitution requires. When such conduct is identified, it must be condemned by the judiciary and its fruits must be excluded from evidence in criminal trials." *Id.,* at 15, 88 S.Ct. at 1876.

conclude that the dissenting opinion was correct on original submission.

■ This Court has consistently followed the rule that when a person is stopped on an inarticulate hunch, the resulting discovery of contraband is inadmissible. *Hinson v. State,* Tex.Cr.App., 547 S.W.2d 277 (1977); *Faulkner v. State,* Tex.Cr.App., 549 S.W.2d 1 (1976); *Scott v. State,* Tex.Cr. App., 549 S.W.2d 170 (1976); *Armstrong v. State,* Tex.Cr.App., 550 S.W.2d 25 (1976); *Leighton v. State, supra; Smith v. State, supra; Brown v. State, supra.* The only differences in the above-cited cases and the instant case are that all those cases involve the stopping of an automobile and in the instant case the appellant was not stopped and was not in an automobile but rather standing on the street. However, these are differences without a distinction.

■ The officer here, acting under his badge of authority, approached the appellant and his companions specifically for investigative purposes to secure information and·"to see if they had any business in the area." Such investigations should be initiated only if the officer can give *"specific* reasonable inferences which he is entitled to draw from the *facts* in light of his experience," *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, quoted in opinion on original submission, emphasis added. The only facts the officer had at the initiation of his investigation were (1) a number of recent burglaries in the area and (2) four men standing together on a sidewalk at an intersection at 10:20 in the morning. It appears the officer initiated his investigation on "his inchoate and unparticularized suspicion" (*Terry v. Ohio,* supra) that appellant and his companions might in some way be connected with the recent burglaries. If such a suspicion were a reasonable inference from standing on a street corner in this neighborhood, all citizens passing through victimized neighborhoods would be suspects, and pedestrian checkpoints could be set up to monitor their comings and goings. Practices of this kind are repugnant to a free society. If victimization by crime becomes the justification for indis-criminate intrusion by the state, then we forfeit the security of our persons and privacy from invasion by the police on a hope of future security from the criminal, and ultimately find ourselves the displaced refugees in a raging war on crime.

■ The officer's investigative action in this case was unreasonable under the Fourth Amendment to the United States Constitution and Article 1, Section 9 of the Constitution of Texas. The evidence should have been suppressed.

Appellant's motion for rehearing is granted. Our prior judgment affirming the conviction is set aside. The judgment of the trial court is reversed and the cause remanded.

## DISSENTING OPINION ON APPELLANT'S MOTION FOR REHEARING

DOUGLAS, Judge.

Judge Green for the Court correctly disposed of this case on original submission. On rehearing, a majority of this Court now holds without any evidence to support it that appellant and three other men were stopped by the officer. There is no evidence that the officer stopped them because they were already stopped and standing at the intersection of a residential area in El Paso at 10:20 in the morning. Several recent burglaries had been committed in that area.

All the officer did was ask for identification when the heroin from appellant's pocket fell to the ground.

The language of Mr. Justice White in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, cited in the original opinion, fits this case. He wrote as follows:

"There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets. Absent special circumstances, the person approached may not be detained or frisked, but may refuse to cooperate and go on his way. . . ."

In the present case appellant was neither stopped nor detained by the officer. The officer merely asked for identification. He did not ask for incriminating evidence. One's identification would rarely, if ever, be incriminating. There was no frisk and no search by the officer. He made the arrest after he saw the heroin.

The asking of identification was not unreasonable or unconstitutional. The heroin picked up by the officer was admissible. The cases relied upon by the majority are not in point.

The motion for rehearing should be denied.

Onion, P. J., joins in this dissent.