Frank P. AMORELLA, Appellant,

v.

The STATE of Texas, Appellee.

No. 54913.

Court of Criminal Appeals of Texas.

July 13, 1977.

Don Leonard—court appointed—Fort Worth, for appellant.

Tim Curry, Dist. Atty., Marvin Collins, James J. Heinemann and Candyce Howell, Asst. Dist. Attys., Fort Worth, for the State.

## OPINION

GREEN, Commissioner.

This appeal stems from an order revoking probation. On April 6, 1976, the appellant waived trial by jury and entered a plea of guilty before the court to the offense of burglary of a motor vehicle. See V.T.C.A. Penal Code, Section 30.04. His punishment was assessed at seven years. The imposition of sentence was suspended and appellant placed on probation. Among the probationary conditions imposed by the court was that defendant "Commit no offense against the laws of this state or of any other state or of the United States."

On October 14, 1976, a motion to revoke appellant's probation was filed, alleging violations of terms and conditions of probation, including that appellant ". . . on or about the 1st day of October, 1976, in the County of Tarrant and State of Texas, did then and there unlawfully, knowingly and intentionally possess a usable quantity of marijuana of less than two ounces, against the peace and dignity of the State." On November 5, 1976 a hearing was conducted on the State's motion to revoke probation, after which the trial court granted the motion. The court found appellant violated a condition of his probation by his unlawful possession of "a usable quantity of marijuana."

The record reflects that on October 1, 1976, at approximately 1:30 a.m., Arlington Police Officer David Pugh observed a vehicle with the lights on and motor running parked on a large parking lot of a Woolco store in Arlington, Tarrant County. Officer Pugh was unable to estimate the number of burglaries reported in the immediate vicinity of the Woolco store during the three years he had patrolled the area, but he characterized the area as a "high crime area."[1] The vehicle was parked on the east side of the store immediately beside the building with its motor running. Woolco was not open for business at that time, and all other businesses in the vicinity were closed. Officer Pugh observed a person standing at the rear of the vehicle by the open car trunk. As Officer Pugh drove by, he observed two other people sitting inside the parked car. Pugh testified:

"At that time of night the businesses were closed. The subject was standing with an open trunk next to a Woolco Store and they appeared to be watching me as I drove by so I felt like it was my duty under suspicious circumstances to stop the vehicle and find out who and what they were doing there."

When the man outside the car noticed Officer Pugh he closed the trunk, got into the car and drove from the parking lot. Officer Pugh then stopped the vehicle and requested the occupants' identification. Appellant, a passenger in the car, informed Officer Pugh that he had no identification but that his name was "Frank Amorella." Pugh was aware of an outstanding arrest warrant for a man of that name, and after being advised as a result of a warrant check with his sergeant and the computer operator at the police station that there was an arrest warrant for assault for a man of that name, and that the description of appellant fit that of the Frank Amorella named in the warrant, Pugh arrested appellant and transported him to the Arlington jail. Pugh conducted a preliminary search of appellant and found a "roach clip." Pugh then placed appellant in the holdover cell and, prior to a "strip search" of appellant

---

1. The fact that criminal activity is more likely in one geographical area than another does not by itself satisfy the standards required for an interrogatory stop. *United States v. Brignoni-Ponce*, 422 U.S. 873, 882, 886, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975).

for narcotics, the jailer observed appellant drop something into the holding cell ashtray. The jailer examined the ashtray and found a cellophane bag containing .7 grams of marihuana.

Appellant challenges the legality of his initial arrest and thus the admissibility of the marihuana found at the end of the chain of events which followed. Appellant's objection to the admission of the evidence during the revocation hearing was overruled. As we noted in *Faulkner v. State*, 549 S.W.2d 1, 2:

"If the initial arrest was invalid, the marijuana later found would be subject to suppression under the 'fruit of the poisonous tree' doctrine of *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)."

In *Thompson v. State*, 533 S.W.2d 825, 826 (Tex.Cr.App.1976), this Court held:

"A police officer may make an investigatory stop under appropriate circumstances even though the officer has no probable cause for arrest. An officer may have specific and articulable facts which, in the light of his experience and general knowledge, reasonably warrant such a stop. *Hernandez v. State*, 523 S.W.2d 410 (Tex.Cr.App.1975); *Baity v. State*, 455 S.W.2d 305 (Tex.Cr.App.1970); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)."

■ The justification for Officer Pugh's initial stop rests on the following articulable facts and circumstances which he observed and from which he drew his inferences.

Pugh, a three year police veteran, sighted an automobile stopped with its motor running in the parking lot of a *closed* Woolco store at an unusual hour, one thirty a.m. All other businesses in that area were closed. Pugh was aware that the store was located in a "high crime area." Pugh noted that, although the store parking lot was large enough to hold "several hundred" cars, the car was parked "immediately next to" the store. Pugh observed two men inside the car and a third man standing at the back of the vehicle with the trunk open, all of whom appeared to be watching Pugh as he drove by. As Pugh passed the car the outside man closed the trunk, got into the car, and drove away. It was under these undeniably suspicious circumstances that Officer Pugh stopped the vehicle to investigate. Compare these facts with the fact situation in *Ceniceros v. State*, 551 S.W.2d 50, (Tex.Cr.App., on rehearing May 18, 1977), and in *Tunnell v. State*, 554 S.W.2d 697, (Tex.Cr.App.1977).

In *Ceniceros* the arresting officer, seeing four men standing on a sidewalk at 10:20 in the morning, stopped his car, approached the men "specifically for investigative purposes to secure information and 'to see if they had any business in the area.'" This Court stated: "The only facts the officer had at the initiation of his investigation were (1) a number of recent burglaries in the area and (2) four men standing together on a sidewalk at an intersection at 10:20 in the morning." The Court held the investigative action to be unreasonable.

In *Tunnell, supra*, at 2:16 a.m. the officer patrolling in his car saw three men parked in a well-lighted hospital parking lot with the car lights turned off about one mile from a Kraft Food Company plant. The officer knew the Kraft plant was operated twenty-four hours a day. He thought the activity of the men sitting in the car was suspicious and warranted an investigation. He drove a short distance, turned around, and as he drove near the car he noticed its lights had been turned on. The car drove off, and the officer followed it a short distance and stopped it for investigation. As stated in the Court's opinion, there was nothing in the record to suggest that the officer's purpose in stopping the car was to determine if he had an operator's license. Officer Alford testified: ". . . appellant and his two companions committed no traffic violations, engaged in no criminal activity, made no furtive gestures, and took no evasive actions after Alford began his pursuit." This Court reversed, holding that "the officer's investigative action was unreasonable and thus in violation of the Fourth Amendment to the United States

Constitution and Article I, Section 9, of the Texas Constitution.

We find that neither *Ceniceros, supra,* nor *Tunnell, supra,* is controlling in the instant case.

As we noted in *Wood v. State,* 515 S.W.2d 300, 305:

"The Fourth Amendment has been held not to require a policeman who lacks a precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow crime to occur or a criminal to escape. Circumstances short of probable cause for arrest may justify temporary detention for investigation and questioning. Thus, neither tests of reliability demanded for showing of probable cause nor showing of probable cause is required to justify an investigative stop. A brief stop of a suspicious individual in order to determine his identity or to maintain status quo momentarily while obtaining more information may be reasonable in light of facts known to the officer at the time."

Viewing the facts and circumstances as a whole, we hold Pugh's initial stop of the vehicle for the purpose of investigation was proper. Under the facts and circumstances shown by the evidence and stated above, the subsequent arrest and search of appellant were justified. No error in the admission in evidence of the contraband is reflected. *Merriweather v. State,* 501 S.W.2d 887 (Tex.Cr.App.); *Parker v. State,* 544 S.W.2d 149 (Tex.Cr.App.).

The judgment is affirmed.

Opinion approved by the Court.

DOUGLAS, Judge, concurring.

I concur in the opinion for the reasons given by Judge Green and for the reasons in the dissenting opinions in *Ceniceros v. State,* 551 S.W.2d 50 (No. 52,528, delivered May 18, 1977); *Tunnell v. State,* 554 S.W.2d 697 (Tex.Cr.App. delivered July 13, 1977), and particularly in *Scott v. State,* 549 S.W.2d 170 (Tex.Cr.App.).