TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-04-00266-CR






David Allen Cronin, Appellant


v.


The State of Texas, Appellee







FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT

NO. CR2003-373, HONORABLE JACK H. ROBISON, JUDGE PRESIDING





D I S S E N T I N G O P I N I O N


 I respectfully dissent from the majority's judgment reversing the judgment of the
district court. Under a proper application of the standards governing our review of the district
court's denial of Cronin's motion to suppress, we should affirm.


The proper scope of our review


 The requirement of "reasonable suspicion" before initiating an investigatory detention
is among our system's checks and balances that preserve freedom by preventing arbitrary or abusive
use of power by the public servants with whom the people have entrusted authority. It prohibits law
enforcement officers from initiating an investigatory detention based solely on mere subjective
opinion, unparticularized suspicion, or hunch. See, e.g., Ford v. State, 158 S.W.3d 488, 493 (Tex.
Crim. App. 2005). Instead, a law enforcement officer must act based on specific articulable facts
that, when combined with rational inferences from those facts, would lead the officer to reasonably
conclude that a particular person actually is, has been, or soon will be engaged in criminal activity. 
Id. at 492. This check and balance is maintained by courts: we are to subject detentions to the
"detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search
and seizure in light of the particular circumstances." Id. at 493 (quoting Garcia v. State, 43 S.W.3d
527, 530 (Tex. Crim. App. 2001)). (1)

 But this does not mean that our Court, in the guise of guarding against detentions
based on mere subjective opinion or surmise, itself merely subjectively second-guesses law
enforcement decisions. To the contrary, we are to employ a "totality of the circumstances" analysis
that requires us to respect the common-sense, reasonable judgments of law enforcement officers, as
informed by all surrounding facts and circumstances and the rational inferences and deductions
officers may draw from them based on their experience and familiarity with the areas they serve. 
As the United States Supreme Court has explained:


Courts have used a variety of terms to capture the elusive concept of what cause is
sufficient to authorize police to stop a person. . . . But the essence of all that has been
written is that the totality of the circumstances--the whole picture--must be taken
into account. Based upon that whole picture, the detaining officers must have a
particularized and objective basis for suspecting the person stopped of criminal
activity.


 The idea that an assessment of the whole picture must yield a particularized
suspicion contains two elements, each of which must be present before a stop is
permissible. First, the assessment must be based upon all the circumstances. The
analysis proceeds with various objective observations, information from police
reports, if such are available, and consideration of the modes or patterns of operation
of certain kinds of lawbreakers. From these data, a trained officer draws inferences
and makes deductions--inferences and deductions that might well elude an untrained
person.


 The process does not deal with hard certainties, but with probabilities. Long
before the law of probabilities was articulated as such, practical people formulated
certain common-sense conclusions about human behavior; jurors as fact-finders are
permitted to do the same--and so are law enforcement officers. Finally, the evidence
thus collected must be seen and weighed not in terms of library analysis of scholars,
but as understood by those versed in the field of law enforcement.


 The second element contained in the idea that an assessment of the whole
picture must yield a particularized suspicion is the concept that the process just
described must raise a suspicion that the particular individual being stopped is
engaged in wrongdoing. . . . "[T]his demand for specificity in the information upon
which police action is predicated is the central teaching of this Court's Fourth
Amendment jurisprudence."



U.S. v. Cortez, 449 U.S. 411, 417-18 (1981) (quoting Terry v. Ohio, 392 U.S. 1, 21 n.18 (1968));
Woods v. State, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997) (adopting, as "well reasoned and
persuasive," the rationale of Cortez and U.S. v. Sokolow, 490 U.S. 1, 8 (1989)).

 In sum, the "totality of the circumstances" analysis has two components. First, a
reviewing court ascertains what the "whole picture" is. This "whole picture" must include the full
range of objective facts and circumstances--the "historical facts"--surrounding the investigatory
detention. Additionally, it includes background facts that inform a law enforcement officer's
assessment of the historical facts and permit the officer to draw rational inferences and deductions
regarding the significance of the historical facts. Such inferences, too, are included in the whole
picture that reviewing courts consider. Thus, as the Texas Court of Criminal Appeals recently
acknowledged, "law enforcement training or experience may factor into a reasonable-suspicion
analysis," Ford, 158 S.W.3d at 494, and that, viewed through that lens and in full context, otherwise
innocuous or innocent facts may indicate criminal conduct. Woods, 956 S.W.2d at 38 ("there may
be instances when a person's conduct viewed in a vacuum, appears purely innocent, yet when viewed
in light of the totality of the circumstances, those actions give rise to reasonable suspicion."); see also
United States v. Arvizu, 534 U.S. 266, 273 (2002) ("This process allows officers to draw on their own
experience and specialized training to make inferences from and deductions about the cumulative
information available to them that might well elude an untrained person.") (internal quotations
omitted).

 Other background facts that reviewing courts must consider include the nature of the
local area and the customs of its inhabitants with which law enforcement officers (and trial judges)
are familiar. We are to "give due weight to inferences drawn from [historical] facts by resident judges
and local law enforcement officers." Ornelas v. United States, 517 U.S. 690, 699 (1996). The
Supreme Court has explained the reasoning underlying this requirement:


A trial judge views the facts of a particular case in light of the distinctive features and
events of the community; likewise, a police officer views the facts through the lens
of his police experience and expertise. The background facts provide a context for
the historical facts, and when seen together yield inferences that deserve deference.



Id. The same objective facts, in other words, may yield different inferences and deductions depending
on the nature of the local environment and the customs of its inhabitants. As the Supreme Court
observed when striking down a Ninth Circuit decision finding a detention unreasonable, "[w]e think
it quite reasonable that a driver's slowing down, stiffening of posture and failure to acknowledge a
sighted law enforcement officer might well be unremarkable in one instance (such as a busy San
Francisco highway) while quite unusual in another (such as a remote portion of rural southeastern
Arizona). [The officer] was entitled to make an assessment of the situation in light of his specialized
training and familiarity with the customs of the area's inhabitants." Arvizu, 534 U.S. at 275-76. 
Similarly, we are to respect the rational inferences and deductions that local law enforcement officers
may derive from their experience and familiarity with the diverse circumstances of the areas they
serve--and avoid merely assuming our own interpretation of the facts from the perspective of our
Austin location.

 Only after this "whole picture" is ascertained by the reviewing court does the court
proceed to the second step of the "totality of the circumstances" analysis, assessing the objective
reasonableness of the investigatory detention. The first prong of the "totality of the circumstances"
analysis is controlled almost entirely by trial courts. In our appellate review, we are to give virtually
complete deference to a trial court's determination of the "whole picture." Maxwell v. State, 73
S.W.3d 278, 281 (Tex. Crim. App. 2002); Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App.
2000); see Ornelas, 517 U.S. at 699. Additionally, the trial court is the sole judge of the credibility
of the witnesses and the weight to be given their testimony, and it may choose to believe or disbelieve
any or all of a witness's testimony. Laney v. State, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003); 
Wood v. State, 18 S.W.3d 642, 646 (Tex. Crim. App. 2000); Alvarado v. State, 853 S.W.2d 17, 23
(Tex. Crim. App. 1993); Allridge v. State, 850 S.W.2d 471, 492 (Tex. Crim. App. 1991). We review
de novo only the trial court's assessment, based on the "whole picture," whether law enforcement
acted objectively reasonably in concluding that a person actually is, has been, or soon will be engaged
in criminal activity. Ford, 158 S.W.3d at 492.

 Furthermore, we are obligated to uphold the trial court's ruling denying a motion to
suppress if that ruling was supported by the record and was correct under any theory of law applicable
to the case. Armendariz v. State, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003); State v. Ross, 32
S.W.3d 853, 856 (Tex. Crim. App. 2000). That rule holds true even if the trial court gave the wrong
reason for its ruling. Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).


Application


 At the suppression hearing, Officer Anderson identified a number of objective facts
and circumstances underlying her conclusion that "it was just very suspicious why [Cronin] was
there." The record reflects the following: at approximately 1:30 in the morning of Wednesday, June
25, 2003, Officer Anderson, a thirteen-year veteran of the New Braunfels Police Department, was
patrolling along Farm-to-Market Road 306 westward from Interstate 35. No other vehicles were on
FM 306 at that late hour. Officer Anderson noticed a pickup truck with a camper moving slowly
through a parking lot alongside a local business, Doug's Barbeque, near a dumpster. The truck
appeared to be coming from the back of the business. The parking lot was empty and dark, and the
business was closed--and had been for several hours.

 Officer Anderson was familiar with the business and the layout of its property, having
previously patrolled the area; she had also investigated the vandalism or attempted break-in of a
nearby business one-and-a-half months earlier. (2) A paved parking area extends around the sides and
front of the business. One side is where Officer Anderson first saw the truck; on the other side are
picnic tables blocking access to the back area from that side. The pavement ends near the back of the
building, and a semi-circular gravel driveway continues into an open field bounded by trees and a
ditch. These topographical features, Officer Anderson explained, would have made it extremely
difficult, if not impossible, for the defendant to reach the back of the business by driving through the
field. As Officer Anderson explained, "There is mainly a field-type area back behind it, just open
field grass. Nobody does anything with it." However, between the gravel driveway and the back of
the Doug's Barbeque building is a stand-alone storage building, the only structure located behind the
building.

 The State did not comprehensively develop background facts regarding local custom
to place these historical facts in context, nor did it attempt to develop whether or how Officer
Anderson's experience as a thirteen-year veteran of the New Braunfels police department informed
her assessment of the historical facts. However, Officer Anderson did supply some significant
background facts that informed her assessment of the situation. She recounted that, in her prior
patrols of the area, she had never seen vehicles in the business's parking lot after midnight. Similarly,
she observed, with reference to the "field-type area back behind" the business, "Nobody does anything
with it," a statement that the district court could have interpreted to mean that individuals rarely or
never went into that area. Finally, as previously noted, the only structure in this area behind the
restaurant was a storage building.

 Against this backdrop of historical and background facts, I would hold that Officer
Anderson did not act unreasonably in suspecting that crime was likely afoot when she witnessed
Cronin appearing to emerge from a secluded, inaccessible storage area behind a closed business at
1:30 a.m. on a weeknight, especially where the streets were empty, she had never previously
witnessed anyone in the parking lot after midnight, it was unusual for anyone to be in the area behind
the business, and that area contained only a storage building. I would accordingly hold that the
district court did not abuse its discretion in denying Cronin's motion to suppress and affirm the
district court's judgment.

 The majority overlooks much of the "whole picture" we are required to consider
under the "totality of the circumstances" standard. As suggested by the case law it invokes, the
majority seemingly views Officer Anderson's stopping of Cronin to be supported by nothing more
than Cronin's mere presence in a parking lot late at night. Were that actually the case, I would be
inclined to join the majority. But Officer Anderson, as we have seen, identified numerous other
objective facts and circumstances and drew rational inferences from them based on her familiarity
with the restaurant property and custom in the New Braunfels community. Again, we are to give
deference to "inferences drawn from facts by resident judges and local law enforcement officers" in
light of local conditions. Ornelas, 517 U.S. at 699 ("A trial judge views the facts of a particular case
in light of the distinctive features and events of the community" and such background facts "provide
a context for the historical facts, and when seen together yield inferences that deserve deference."). (3)

 Assuming the "whole picture" is properly considered, the case law cited by the
majority is either distinguishable or supports affirmance. In truth, neither party cites a case involving
facts precisely like this one. See Gurrola v. State, 877 S.W.2d 300, 303 (Tex. Crim. App. 1994)
(individuals were found in exposed parking lot area during afternoon). (4) The cases the majority cites
thus have limited precedential value under the "totality of the circumstances" standard, which is
highly fact-specific: (5) "[t]o the extent that a totality of the circumstances approach may render
appellate review less circumscribed by precedent than otherwise, it is the nature of the totality rule." 
Arvizu, 534 U.S. at 276.

 The majority relies principally on cases that predate the Texas Court of Criminal
Appeals's adoption of the "totality of the circumstances" approach in Woods. (6) Yet even during its
pre-Woods era, the Texas Court of Criminal Appeals suggested that a vehicle being "partially hidden
or situated near the rear door" of a business late at night would be a factor supporting reasonable
suspicion. Johnson, 658 S.W.2d at 626; see also Amorrella v. State, 554 S.W.2d 700, 702-03 (Tex.
Crim. App. 1977) ("undeniably suspicious circumstances" included car being parked in visible
location but immediately next to closed store at 1:30 a.m., when "all other businesses in the area were
closed," with trunk open and motor running). The majority does cite a more recent case from the
Fourteenth Court of Appeals, Klare v. State, 76 S.W.3d 68 (Tex. App.--Houston [14th Dist.] 2002,
pet. ref'd), but then Chief Justice Brister, in dissent, points out reasons why we should be hesitant to
rely upon it: (1) as in the present case, the majority had relied on cases that predated the Texas Court
of Criminal Appeals's adoption of the current "totality of the circumstances" test; and (2) the majority
had improperly applied a "divide-and-conquer analysis" to eliminate, on a piecemeal basis, particular
facts and circumstances as a basis for reasonable suspicion. Klare, 76 S.W.3d at 77-78 (Brister, C.J.,
dissenting). (7) I would also observe that the officer in Klare, unlike here, did not state that he had never
seen anyone in the parking lot at that time of night or that "no one" ever entered the area, or otherwise
elaborated on such features regarding the custom and character of that locality.

 Finally, the mere fact that Officer Anderson did not witness any traffic violations,
erratic driving, or trespassing by Cronin, or other criminal activity in the area that evening, slip op.
at 11-12, does not render her stop unreasonable. The "totality of the circumstances" test requires
consideration of the "whole picture," not merely isolated components of it. Sokolow, 490 U.S. at 8-10. Moreover, conduct that might appear purely innocent in a vacuum can nonetheless, when viewed
amid the totality of the circumstances, give rise to reasonable suspicion. See Woods, 956 S.W.2d at
38.

 I respectfully dissent.



 

 Bob Pemberton, Justice

Filed: September 23, 2005

Publish

1. And it is the proper application of this standard that ensures that, in the majority's words,
"effective policing [is] not at the expense of the Constitution." Slip op. at 12. Certainly that is the
goal of our inquiry here. My departure from the majority concerns where we draw the lines between
effective policing, constitutional limitations, and the respective roles of the courts charged with
enforcing those protections.
2. The following facts are reflected both in Officer Anderson's testimony and in a drawing
she made of the property, which the State introduced into evidence at the suppression hearing.
3. As the supreme court has acknowledged, background facts are "rarely the subject of explicit
findings," and no such findings were made here, but such facts can nonetheless "inform the [trial]
judge's assessment of the historical facts." Ornelas v. United States, 517 U.S. 690, 700 (1996).
4. See also Johnson v. State, 658 S.W.2d 623, 625-27 (Tex. Crim. App. 1983) (truck loaded
with furniture was parked at 5:00 a.m. in "well lighted" parking lot in front of a closed McDonald's
but "was visible from the main thoroughfare"); Tunnell v. State, 554 S.W.2d 697, 698-99 (Tex.
Crim. App. 1977) (men were sitting at 2:16 a.m. in "well-lighted hospital parking lot" only "a short
distance" from factory that operated twenty-four hours a day).
5. Reasonable suspicion, as well as probable cause, "are not readily, or even usefully, reduced
to a neat set of legal rules" but "are instead fluid concepts that take their substantive content from
the particular contexts in which the standards are being applied." Ornelas, 517 U.S. at 695-96
(internal citations omitted). Thus, "each case is to be decided on its own facts and circumstances." 
Id. at 696 (quoting Ker v. California, 374 U.S. 23, 33 (1963)).
6. In these cases, the Texas Court of Criminal appeals employed a different analysis that
atomized the reasonable suspicion inquiry into discrete elements: (1) reasonable suspicion of the
occurrence of past or present activity that is "out of the ordinary"; (2) some suggestion to connect
the detained person with the unusual activity; and (3) some suggestion that the "unusual" activity
is related to a crime. E.g., Johnson v. State, 658 S.W.2d 623, 626 (Tex. Crim. App. 1983). Along
with this, the court would not find an inference of criminal activity reasonable if the court regarded
the activity to be equally consistent with innocent activity. Id.
7. The majority also cites the recent case of State v. Bryant, 161 S.W.3d 758, 762 (Tex.
App.--Fort Worth 2005, no. pet.). Contrary to the majority's suggestion, the court never reached
the issue of whether facts supporting reasonable suspicion were either present or lacking before the
suspect opened his car door. Id.