# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

============================

## ON MOTION FOR REHEARING

============================

## NO. 03-04-00266-CR

**David Allen Cronin, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT
## NO. CR2003-373, HONORABLE JACK ROBISON, JUDGE PRESIDING

## D I S S E N T I N G   O P I N I O N

I respectfully dissent from the granting of the motion for rehearing and would reaffirm

the Court's previous opinion in all respects.

The majority has correctly stated that, for a temporary detention by a peace officer

to be considered reasonable and not in violation of the Fourth Amendment, the State must establish

that the detaining officer knew specific, articulable facts at the inception of the stop, which, taken

together with rational inferences, led her to conclude that the person detained actually is, has been,

or soon will be engaged in criminal activity. *See Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim.

App. 2003). My dissent focuses on the application of this standard and concludes that, based on an

objective review of the facts known by Officer Anderson at the time she initiated the stop, she lacked reasonable suspicion to warrant an invasion of Cronin's constitutional rights. *See Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001).

The majority concludes that reasonable suspicion was created in this case due to Cronin's "lurking" near a storage shed in a "concealed" area of a "closed" parking lot at 1:30 a.m., considering the "unsolved vandalism" in the surrounding area and the "complete absence" of other vehicles in that location at that time during the preceding two months. The majority's characterization of the circumstances is, however, misleading.

Officer Anderson testified that Cronin emerged either from the side of or behind the restaurant, meaning that—although Cronin's original location was concealed from the officer's vantage point on FM 306—Cronin would have been in plain sight of anyone on the cross-street, Hunter Road. Thus, his position cannot be described as a "concealed" location. Moreover, regardless of Cronin's exact location, there is no showing that his presence constituted trespass or was in any way suggestive of criminal activity. Second, it is inappropriate to describe him as "lurking" because Officer Anderson consistently described Cronin as emerging or driving away from this location, rather than lingering there. Third, the parking lot was not "closed"; all witnesses confirmed that there are two entrances from major roadways opening into the lot.

Fourth, although the majority repeatedly mentions that Cronin was seen next to a storage shed, no specific, articulable facts are provided to explain what is inherently suspicious about this fact. Officer Anderson's subjective opinion about the suspicious nature of this shed does not rise to the level of "articulable facts," *see Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App.

2005), and I am aware of no authority providing that criminal intent or behavior can be inferred from one's mere proximity to a storage shed. No one asserts that Cronin conducted any activity in connection with this shed—only that his car was seen in the same area. There are countless legitimate reasons, even during the late-evening hours, that a person may pull into an empty lot that happens to contain a storage shed.

Fifth, nothing in the record establishes a "complete absence" of other vehicles in that area at that time of night. Officer Anderson testified merely that, during her patrol hours, *she* had never observed another vehicle in that location. No one contends that Officer Anderson had a constant watch on this lot every night for two months. Although the officer did not recall seeing other vehicles, there certainly could have been other motorists not personally witnessed by her that, like Cronin, momentarily stopped in or drove through the parking lot during the late-evening hours.

Finally, in searching for a basis to support the reasonableness of Officer Anderson's suspicion, the majority emphasizes the "unsolved vandalism of a neighboring business." Although dramatized to create the image of a high-crime area, this incident involved nothing more than a few rocks thrown through a front window of a business located across the roadway five weeks earlier, and the officer testified that she was aware of no other criminal activities in the surrounding area since 1990. Yet, even if the single incident of prior vandalism were enough to classify the area as crime-ridden, to rely upon this dissimilar and remote criminal act to establish reasonable suspicion, the evidence must show that Cronin's activities were similar in time, place and performance to the previous crime; otherwise, complete speculation must be employed. *See Gurrola v. State*, 877

3

S.W.2d 300, 302 (Tex. Crim. App. 1994) (mere presence in high-crime area insufficient to justify stop and officer cannot rely solely on speculation).

Here, the State failed to demonstrate a reasonable similarity between Cronin's observed activities and the previous occurrence. He was not found in the front of the building, and there is no evidence that he had in his possession any rocks or other objects that would presumably be thrown through a window. Importantly, Officer Anderson testified that, prior to detaining Cronin, she did not observe him committing any violation of the law, that he was not trespassing, and that he made no evasive or furtive gestures. In other words, the officer was unable to articulate any specific facts that would allow her to rationally infer that Cronin had committed or was about to commit a similar incident of vandalism. *See Brother v. State*, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005) (facts relied on by officer must amount to more than mere hunch or suspicion). Nevertheless, based solely on her observation of Cronin in this parking lot at night, Officer Anderson determined that she "was going to . . . follow the vehicle and stop it because it was just very suspicious why he was there."

Without knowing any other facts, Officer Anderson concluded that she should stop and investigate Cronin, "and if everything checked out, he would be cut loose." By holding that this establishes reasonable suspicion, the majority fails to recognize that our Constitution protects a citizen's right to have it the other way around: *innocent until proven guilty*. *See* U.S. Const. amend. XIV; *Randel v. State*, 826 S.W.2d 943, 945 n.3 (Tex. Crim. App. 1992). As aptly stated in this Court's original opinion, "effective policing need not be at the expense of the Constitution." *Cronin v. State*, No. 03-04-00266-CR, 2005 Tex. App. LEXIS 7769, *19 (Tex. App.—Austin, Sept. 23,

2005, no pet. h.). Law enforcement personnel should be free to employ their experience and intuition in making decisions in the field. However, they should also be mindful of the "raft of legitimate tools at their disposal to investigate suspicious activity short of investigative detention." *Id*.

The majority acknowledges that reasonable suspicion cannot be based solely on one's presence in a high-crime area during the late evening; additional facts are needed. *See, e.g.*, *Amorella v. State*, 554 S.W.2d 700, 701 (Tex. Crim. App. 1997) (sufficient facts when car was parked next to closed store, late at night, in high-crime area, with trunk open, motor running, and furtive gestures of motorists); *Meeks v. State*, 653 S.W.2d 6, 8-9 (Tex. Crim. App. 1983) (accused carrying handgun was sufficient to provide reasonable suspicion). Here, Cronin was not even located in a high-crime area, and the State presented no additional facts beyond Cronin's presence in a parking lot of a closed business at 1:30 a.m. The court of criminal appeals has held that this is not enough. *See Shaffer v. State*, 562 S.W.2d 853, 854 (Tex. Crim. App. 1978) (taxi driving slow in commercial lot of closed businesses at night did not amount to reasonable suspicion); *see also Klare v. State*, 76 S.W.3d 68, 77 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (truck parked in lot of closed shopping strip at 2:00 a.m. was not sufficient, even considering it was high-crime area).

A double inference must be indulged to reach the majority's conclusion. It must be inferred that Cronin was hidden behind the building and that his activities indicated that he had or was about to engage in criminal activity. This double inference collapses when an objective review of Officer Anderson's testimony is conducted because, as discussed above, her testimony

5

demonstrates that Cronin was not in a concealed location, he was not observed committing any violation, and he was not seen with any item that would presumably be used to vandalize the adjacent building.

When reviewing a motion to suppress, we give great deference to the trial court's findings of historical facts, *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997), and will sustain the trial court's ruling *if the ruling is reasonably supported by the record*. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002) (emphasis added). Here, the record does not demonstrate sufficient evidence to sustain the court's admission of the evidence. Simply put, at the inception of the stop, Officer Anderson was not aware of specific, articulable facts that, taken together with rational inferences, would justify her suspicion of Cronin as "reasonable." Instead, she acted on mere speculation. Consequently, Cronin's Fourth Amendment rights were improperly invaded when Officer Anderson detained him. On this basis, I would overrule the State's motion for rehearing and reaffirm this court's original opinion, reversing Cronin's conviction. Therefore, I respectfully dissent.

 

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B.A. Smith and Pemberton

Filed:   December 16, 2005

Do Not Publish