Jackie Eugene **HINSON**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 52352.

Court of Criminal Appeals of Texas.

Feb. 23, 1977.

Rehearing Denied March 16, 1977.

George R. Milner, Ronald L. Goranson, on appeal only, Dallas, for appellant.

Joe Smith, Dist. Atty., Seminole, Jim D. Vollers, State's Atty., David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DALLY, Commissioner.

This is an appeal from a conviction for the offense of possession of more than four ounces of marihuana; the punishment is imprisonment for 8 years and a fine of $5,000.

The appellant asserts that evidence admitted, over his counsel's timely objection, was obtained by an unlawful arrest, search, and seizure made in violation of his constitutional rights. We agree; the judgment must be reversed.

Soon after midnight of January 17, 1975, Sheriff Guy Kinnison and his deputy Jim Nance, using the flashing red lights and spot light of their patrol car, stopped a U–Haul van type truck as it was leaving the Dawson County Airport. At Kinnison's request the appellant, who was driving the truck, exhibited to Kinnison a license to operate a motor vehicle. In response to the Sheriff's questions, the appellant said he had had trouble with his airplane and that he was hauling its cargo of clock parts to Dallas in the truck. Kinnison testified that he smelled the strong odor of marihuana while he was in conversation with the appellant near the rear of the truck. The Sheriff searched the truck and found that it was loaded with over 1200 pounds of marihuana. Although it was disputed by the appellant, Kinnison said the appellant gave oral consent for the inspection of the contents of the truck. Our disposition of this appeal is such that we need not inquire further or decide whether the consent to search was voluntary or whether the Sheriff had probable cause to search after he stopped the truck.

From the facts and circumstances, which we find in the record and will discuss, it is obvious that the Sheriff did not have probable cause to stop and arrest either the ap-

pellant or his passenger, and the Sheriff did not have probable cause to search the truck before it was stopped. *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Henry v. United States*, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959).

The State makes no contention that the arrest was for the violation of traffic laws or that the truck was stopped to inspect the operator's license of the driver. See *Leonard v. State*, 496 S.W.2d 576 (Tex.Cr.App. 1973). Although there had been thefts committed at the airport, there was not even a hint of suspicion that the appellant was involved in these activities. The only reason for stopping the appellant was the information furnished to the Sheriff by Bernie Williams and the Sheriff's own knowledge and observation after receiving that information.

Bernie Williams was a local businessman whom the Sheriff had known for many years. Williams operated a U–Haul rental agency. For our purpose here we may and do assume that Williams was a credible and reliable informer. At about 11:50 p. m. on January 17, 1975, Williams came to the Sheriff's office in the courthouse; he told Sheriff Kinnison that he, Williams, had just rented a U–Haul van type truck to two men of whom he was suspicious. The men had told Williams that they had encountered trouble with their airplane, which was at the airport, and that they were renting the truck so they could take to Dallas clock parts they had in the plane. Williams told the Sheriff he was not satisfied with the story the men told and that "they were very suspicious acting." Williams did not give the Sheriff any more specific information as the basis for his suspicion of the men.

After receiving this information from Williams, the Sheriff and his deputy immediately went to the airport. They observed the U–Haul truck on a public road at the airport leaving the flight line area. They made a U-turn, followed the truck, and stopped it. We quote a portion of the Sheriff's testimony which he gave concerning the stopping of the truck.

"Q. Did he [Williams] give you any basis for suspicion? Did he tell you anything that would form his conclusion?

"A. No, sir. Not anything specifically.

"Q. All right. So, it is fair to say then the information he revealed to you is that he had rented a U–Haul truck to two men who told him that they wanted to haul some clock parts from Lamesa to Dallas, having had plane trouble?

"A. Yes, sir.

"Q. Now, that is a lawful explanation for their purpose, is it not?

"A. I suppose so, yes, sir.

"Q. He told you they were not so suspicious that he did not accept the money for the truck, did he?

"A. No, sir.

"Q. Now, after receiving that you went directly to the airport?

"A. Yes, sir.

"Q. When you got to the airport did you see anything unloaded from any airplane?

"A. No, sir.

"Q. All right. The first thing you saw then was the U–Haul truck leaving the airport property onto the north-south road?

"A. This would be correct, yes, sir.

"Q. Now, that is a public municipal airport, is it not?

"A. Yes, sir.

"Q. And it is not illegal to be there at any hour of the day, is it?

"A. No, sir.

"Q. Up to the point I have covered here did you see any unlawful act?

"A. No, sir.

"Q. All right. After that what did the U–Haul truck do?

"A. Well, it left the airport property onto the county paved road running north and south and turned south.

"Q. All right. And what did you as the driver of the patrol car do?

"A. Well, we met the vehicle on the airport property, so we had to turn

around. We turned around and followed the truck south and stopped the truck down at the next road intersection on the south side of the airport.

"Q. All right. That would then be at the southeast corner of the airport?

"A. Yes, sir.

"Q. All right. Now, during the drive by the U–Haul truck did you observe any violation of any traffic laws?

"A. No, sir.

"Q. Did you observe any suspicious conduct on the part of the U–Haul truck?

"A. No, sir.

"Q. Now, when you made the U-turn at that time you intended to stop and see what was in the U–Haul truck, had you not, Sheriff?

"A. Well, we intended to stop the truck. Like I say, it was very—it was very suspicious to us at this time of night.

"Q. All right. You had been told why the truck was there, had you not, Sheriff?

"A. We had been told a reason, yes, sir.

"Q. Is it fair to say that you expected to find a truck at the airport?

"A. Yes, sir.

"Q. And what was suspicious about finding what you expected to find?

"A. Well, to me, a truck, a U–Haul truck, a large one hauling clock parts is very unusual to me.

"Q. Have you ever seen clock parts hauled?

"A. No, sir.

"Q. What would be unusual about it in your judgment?

"A. Well, it is just much too large a vehicle to haul clock parts unless you had a whole lot of clock parts.

"Q. Isn't it fair to say, though, Sheriff, that you had a hunch there was something there besides clock parts?

"A. I couldn't say.

"Q. Well, isn't that the very reason you stopped and searched the truck?

"A. That is not the reason I searched the truck, no, sir.

"Q. Well, isn't that the very reason you stopped the truck?

"A. We stopped the truck to see who was in it.

"Q. And to see what was in the truck, did you not, Sheriff?

"A. Not necessarily, no, sir."

It is the State's contention that the evidence in this record, including the testimony of Kinnison, justified the appellant's arrest under the provisions of Article 14.03, V.A.C.C.P., which provides:

"Any peace officer may arrest, without warrant, persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony or breach of the peace, or threaten, or are about to commit some offense against the laws."

We reject the State's contention since we find the evidence and circumstances in the record to be insufficient for the appellant's arrest under the provisions of Article 14.03, V.A.C.C.P.

The protection of the Fourth Amendment to the Constitution of the United States and Article 1, Section 9 of the Constitution of this State against unreasonable searches does not prevent a law enforcement officer in appropriate circumstances from stopping and detaining a person to investigate suspected criminal activities though there is not probable cause to make an arrest. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Hernandez v. State*, 523 S.W.2d 410 (Tex.Cr.App.1975); *Ablon v. State*, 537 S.W.2d 267 (Tex.Cr.App.1976). To determine that an officer was justified in making such an intrusion upon the freedom of the citizen stopped and detained, the court must find that the officer in light of his experience and general knowledge had specific articulable facts which taken together with rational inferences from those facts would reasonably warrant the intrusion on the freedom of the citizen stopped for further investigation. *Terry v. Ohio*,

supra; *Hernandez v. State*, supra; *Thompson v. State*, 533 S.W.2d 825 (Tex.Cr.App. 1976); *Mann v. State*, 525 S.W.2d 174 (Tex. Cr.App.1975).

■ We have concluded that the evidence in this record shows no more than a mere suspicion and that the evidence in this record does not show specific and articulable facts which reasonably warranted the stopping of the appellant for further investigation. *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); *Brown v. State*, 481 S.W.2d 106 (Tex.Cr.App.1972); *Talbert v. State*, 489 S.W.2d 309 (Tex.Cr. App.1973); *Leighton v. State*, 544 S.W.2d 394 (Tex.Cr.App.1976). It is, of course, established by authority too well known to require citation, that the results of a search cannot be considered to determine whether there was probable cause for the search in the first place.

The judgment is reversed and the cause remanded.

Opinion approved by the Court.