**Wistong Riascos TORRES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–90–010–CR.**

Court of Appeals of Texas, Waco.

Oct. 9, 1991.

Rehearing Denied Nov. 6, 1991.

Walter M. Reaves, West, for appellant.

John W. Segrest, Crim. Dist. Atty., Ralph T. Strother, Crawford Long, Asst. Dist. Attys., Waco, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

OPINION

CUMMINGS, Justice.

A jury found Appellant guilty of aggravated possession with intent to deliver a controlled substance: cocaine, and assessed his punishment at twenty years in prison and a $50,000 fine. We overrule all points relating to the guilt-innocence phase. However, because the court admitted evidence of an unadjudicated offense at the punishment hearing, we will reverse and remand the cause for a new punishment hearing. *See Blackwell v. State,* 818 S.W.2d 134, 140–41 (Tex.App.—Waco 1991, n.w.h.).

FACTS

Several weeks prior to Appellant's arrest, his girl friend, Jackie Samson, left an old car to be restored with Gene Sterling, a Waco auto mechanic. During the afternoon before his arrest, Jackie Samson stopped at Sterling's residence where the old car was stored in his backyard and left what she described as a "package of money" in the trunk. She took the keys to the trunk and told Sterling not to "mess with" the package. Suspecting contraband, he entered the trunk of the car through the back seat and found the package to contain a large amount of white powdery substance, which he believed to be cocaine. Sterling notified the police. They came to his house and also thought that the contents of the package was cocaine. The officers then obtained a search warrant based on the information Sterling had given and their personal observations. They executed the search warrant and obtained the package containing the alleged cocaine. The police planned to substitute a "dummy" package in the trunk, but before they could do so, Appellant and Jackie Samson arrived in a red Mitsubishi. Jackie Samson exited the car, went directly to the old car and opened the trunk. Appearing angry when she discovered her package was missing, she walked toward the back of Sterling's home, at which time the officers

placed her under arrest. Several policemen then converged on the red Mitsubishi, where Appellant, the driver, still had the motor running, apparently waiting for Samson to return. The officers were concerned that Appellant might be armed, since it was not unusual for persons involved in drug trafficking to be heavily armed. Appellant had a small child in his lap and after handing the child to the police, he was assisted out of the car. He did not have a driver's license, but gave his name as Wistong Torres, a name the officers recognized as having been involved in a previous narcotics investigation. Appellant was then frisked and a *Terry* search was made of the front seat of the car. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). No weapons were found. The officers then placed Appellant under arrest as being a party to the possession of the large amount of cocaine found in the old car and for not having a driver's license.

The officers' reasons for considering Appellant a party to the possession of cocaine found in the old car were: his apparent association with Jackie Samson; he was driving the car in which she arrived to reclaim the cocaine from the old car; and he was wearing a "pager", which one officer testified is often used by drug traffickers.

After placing Appellant under arrest, an inventory search was made of the red Mitsubishi. Discovered in the search was a hidden compartment in the left side panel of the back seat which contained the cocaine Appellant is charged with possessing in this case. Also discovered were insurance papers in Appellant's name and several documents evidencing where Appellant had transferred large sums of money to Columbia on several occasions. After he was given the *Miranda* warning, but before his arrest, Appellant indicated he was from Puerto Rico, but evidence later revealed he was from Columbia and had been in the United States illegally about two years.[1]

1. We have concerns about his status as an illegal alien. The evidence revealed that he came

## POINTS RELATED TO GUILT

In the first three points of error, Appellant complains that the Court erred in failing to suppress evidence because there was no probable cause for his arrest; the inventory search of his car was illegal; and, that the evidence was seized in violation of Article 38.23, TEX.CODE CRIM.PROC. His fourth point is that there was insufficient evidence to convict him of possessing cocaine with intent to distribute. In his last point, he complains the Court erred in allowing evidence to be introduced under Article 37.07, TEX.CODE CRIM.PROC., concerning an unadjudicated offense during the punishment phase of the case.

## DISCUSSION

We will consider Appellant's complaint that there was no probable cause for his arrest. Appellant cites *Hinson v. State*, 547 S.W.2d 277 (Tex.Crim.App.1977) which, though distinguishable from the facts of this case, summarizes the law concerning Appellant being initially detained, as follows:

The protection of the Fourth Amendment to the Constitution of the United States and Article 1, Section 9 of the Constitution of this State against unreasonable searches does not prevent a law enforcement officer in appropriate circumstances from stopping and detaining a person to investigate suspected criminal activities though there is not probable cause to make an arrest. (Cites omitted). To determine that an officer was justified in making such an intrusion upon the freedom of the citizen stopped and detained, the court must find that the officer, in light of his experience and general knowledge, had specific articulable facts which taken together with rational inferences from those facts would reasonably warrant the intrusion on the freedom of the citizen stopped for further investigation.

Certainly, the facts of this case justified the initial detainer of Appellant. The large amount of high purity cocaine confiscated from the old car evidenced it was for other than personal use. Appellant was apparently associated with Jackie Samson who left the package and whom Appellant had driven to the location. Upon his being detained, it was determined that he did not have a driver's license or identification and that he had previously been under investigation in a drug trafficking case. These facts were relied upon by the officers as probable cause for the arrest. We find this satisfies the requirements of Chapter 14, TEX.CODE CRIM.PROC. for a warrantless arrest in that the offense of driving without a driver's license was committed in the officers' presence and the circumstances made the location a suspicious place. Point one is overruled.

Next, Appellant complains the inventory search of his car was illegal. He cites *Benavides v. State*, 600 S.W.2d 809 (Tex.Crim.App.1980), where a murder case was reversed because there was no reasonable connection between the arrest and the vehicle. Here, Jackie Samson arrived at the location in the vehicle and it awaited her with the motor running to take her away after she obtained the contraband

here on a 30–day tourist visa, which had long since expired. It is common knowledge that his native country of Columbia supplies large quantities of cocaine to this country. Evidence of repeated transfers of large sums of money by Appellant to his relatives in Columbia and monthly telephone bills in excess of $1,000, where many calls were made to his family members in Houston and Columbia, all point to business in drug trafficking. We do not believe that the protections of the Fourth Amendment to the United States Constitution nor Article I, Section 9 of the Texas Constitution apply to such illegal aliens, unless they have developed sufficient connection with this country to be considered a part of the community. *See Unit-*

*ed States v. Verdugo–Urguidez,* 494 U.S. 259, 110 S.Ct. 1056, 108 L.Ed.2d 222 (1990). Here, Appellant testified that he had not been employed during his two years in the United States and was living off money given him by his brothers, who were convicted drug traffickers or charged with drug trafficking and on fugitive status. Appellant demonstrated no meaningful ties to the community and we do not find he is entitled to the protection accorded "We the people of the United States" as originally intended by the framers of either the federal or state constitutions. Therefore, we do not believe he has standing to contest the search and seizure of contraband from either car.

from the old car. The evidence further indicates that the vehicle was parked on the wrong side of the street. The officers acted reasonably under the circumstances in impounding the vehicle, since both adult occupants were under arrest and the vehicle was apparently illegally parked. We overrule Appellant's second point.

■ We now consider Appellant's third point, where he complains that his arrest was based on evidence seized as a result of unlawful entry into the trunk of Jackie Samson's old car by Sterling. Appellant concedes that he does not have standing to contest the search of the old car because he did not have an ownership interest; however, he seeks protection under Article 38.-23, TEX.CODE CRIM.PROC., where it provides:

> No evidence obtained by an officer or *other person* in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

Here, the Appellant contends the "other person" was Sterling, who committed the unlawful acts of burglary of a vehicle and criminal trespass. The evidence is unequivocal that Jackie Samson left the old car with Sterling to renovate. Sterling had legal possession and custody of the vehicle. Sterling was an "owner" under the law [2] and therefore could not be prosecuted for the offenses Appellant claims were committed. We overrule Appellant's third point.

■ In his fourth point, Appellant asserts there was insufficient evidence to convict Appellant of possession of cocaine with intent to distribute, because there were no "affirmative links" between Appellant and the cocaine recovered from a concealed compartment in the car.

In reviewing the sufficiency of the evidence, the standard to be applied is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Additionally, where circumstantial evidence is involved, we may use the reasonable hypothesis theory as an analytical procedure in applying the *Jackson* standard. See *Butler v. State*, 769 S.W.2d 234, 238 n. 1 (Tex.Crim.App.1989).

The evidence in this case is overwhelming that Appellant had knowledgeable possession of the contraband. He denies ownership of the red Mitsubishi, claiming it was his mother's car. However, he was present when the car was purchased, signed the purchase agreement and paid over $4,000 in cash for the car. He maintained insurance on the vehicle in his name and kept personal papers inside the car. He and Jackie Samson had lived together for over one year, and both used the car for transportation. Appellant's reaction of dismay when the police found the contraband in the hidden compartment further substantiates his knowledgeable possession. In addition, Appellant had strong ties with Jackie Samson, whom he described as his "lover", and the evidentiary photographs linked them closely together. In fact, she signed her name as Jackie Torres and was acknowledged to have had a child by Appellant. Further, Appellant's Columbian ties were undisputed. Appellant is an illegal alien from Columbia. It was not denied that one of Appellant's brothers is in a Texas prison for drug dealing and another brother, Jose, is a fugitive from charges in this State for drug dealing. Jose had lived with Jackie Samson prior to Appellant coming to Texas. Appellant's nephew is also in a Texas prison for drug dealing. Appellant was never employed during his two years in Texas, yet managed to send thousands of dollars back to his relatives in Columbia. On cross-examination, he could never give a logical explanation of where so much cash came

---

2. " 'Owner' means a person who has title to the property, *possession* of the property, whether lawful or not, or a greater right to possession of the property than the actor." *See* V.T.C.A. PENAL CODE, Section 1.07(a)(24). Had a third party entered the vehicle and stolen a piece of property from it, the State could certainly plead Mr. Sterling as the owner due to his greater right to possession.

from other than his brothers gave it to him—the same brothers who preceded him in Texas and who are now either in prison or on fugitive status. Appellant never paid income tax on any of the cash he transferred to his relatives. The evidence showed that over $10,000 in cash was confiscated by the police in Grimes County in July, 1989, and that he did not know what had happened to the money, which does not seem to comport with reason. Additionally, Appellant was wearing a pager, which the police testified was commonly used by drug dealers and Appellant inquired of the police if they were the "federales," indicating he suspected federal drug officers to be after him. Taking all these facts into consideration, it is reasonable that a jury found beyond a reasonable doubt that Appellant knowingly possessed the contraband found in his car, even though it was cleverly hidden, which in itself is another affirmative link to sophisticated drug dealers. With his interest in and use of the car, his close ties to Jackie Samson whom he drove to the arrest scene where she intended to pick up over three pounds of high purity cocaine; his known drug dealing family; his possession and transmittal of large sums of cash to Columbia without a logical explanation of the source of the income; his use of a pager common to drug dealers; his telephone expenses of over $1,000 per month to numbers in Houston and Columbia; and his illegal alien status with no known employment during his two-year illegal stay in this country convinces us there can be no other reasonable hypothesis except that of the guilt of the defendant. To find otherwise would not comport with reason. Point four is overruled.

Having found no error affecting guilt-innocence, but concluding that the court erred during the punishment phase by admitting an unadjudicated offense in Falls County, we reverse the judgment and remand the cause for a new punishment hearing under article 44.29(b). See TEX.CODE CRIM.PROC.ANN. art. 44.29(b) (Vernon Supp. 1991).

## OPINION ON REHEARING

On October 9, 1991, holding that unadjudicated offenses and their details are not admissible in non-capital trials, we reversed the judgment and remanded the cause for a new punishment hearing. The State complains on rehearing that we failed to do a harm analysis. See TEX.R.APP.P. 81(b)(2).

A jury found Appellant guilty of aggravated possession with intent to deliver a controlled substance: cocaine, and assessed his punishment at twenty years in prison and a $50,000 fine. See TEX.HEALTH & SAFETY CODE ANN. sec. 481.112(d) (Vernon 1991).

During the punishment phase, evidence was admitted concerning an unadjudicated offense relating to the possession of cocaine in the amount of 245 grams. This alleged offense occurred approximately five months after his arrest in this case. Based on the record as a whole, we cannot determine beyond a reasonable doubt that the admission of this unadjudicated offense at the punishment phase did not contribute to the Appellant's twenty-year sentence and the maximum fine, $50,000. See TEX. R.APP.P. 80(b)(2).

Accordingly, we deny the State's motion for a rehearing.