

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0561-20

**JACOB MATTHEW JOHNSON, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW FROM THE FOURTEENTH COURT OF APPEALS BRAZORIA COUNTY

**WALKER, J., filed a dissenting opinion.**

### <u>DISSENTING OPINION</u>

In determining whether a police officer had reasonable suspicion to detain a person, we look to the totality of the circumstances; those circumstances may all seem innocent enough in isolation, but if they combine to reasonably suggest the imminence of criminal conduct, an investigative detention is justified. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). The Court's determination in this case, however, looks to some of the circumstances, not the totality. The actual totality of the circumstances do not combine to reasonably suggest imminent criminal conduct, and I agree with the court of appeals that the detention in this case is not supported by reasonable

suspicion. I respectfully dissent to this Court's decision to reverse.

According to the Court's opinion, "[v]iewed together, here is what we have,"[1] of the totality of the circumstances that combine to suggest criminal activity:

- "Sergeant Cox knew that the park-and-ride had a significant association with criminal activity";

- "He also knew that, after midnight, people did usually not loiter inside their vehicles: they either got in their vehicles and drove away immediately, or they arranged for a ride home in someone else's vehicle";

- "Sergeant Cox also knew that Appellant's vehicle was occupied after midnight";

- "the vehicle was not driving away";

- "(the lights were off)";

- "there was not a 'ride-home' vehicle next to Appellant's vehicle";

- "Sergeant Cox had seen movement . . . at least one occupant of the car was awake"; and

- "Appellant's vehicle [was] in a spot away from the other vehicles . . . ."[2]

The Court finds that these circumstances showed that the presence of Appellant's vehicle was odd and out-of-the-ordinary; therefore, there was "a reasonable suspicion 'that *something* of an apparently criminal nature is brewing.'"[3]

But the presence of Appellant's vehicle was neither odd nor out-of-the-ordinary. Cox confirmed that, when he observed Appellant's vehicle, there were other vehicles in the park-and-ride

---

[1] Majority op. at 13.

[2] *Id.*

[3] *Id.* at 14 (quoting *Derichsweiler*, 348 S.W.3d at 917) (emphasis in *Derichsweiler*).

at that particular time.[4] Cox further testified:

> A. It's a 24-hour park-and-ride. The main use is during the daytime for people that go into plant traffic and park. But it is 24 hours open. So, we have it -- people use it. There's a bar down the road. There's people -- they don't have a big parking spot there. There's people that will park there and commute over to the bar.[5]

Based on Cox's testimony, Appellant's vehicle was parked at the park-and-ride during normal operating hours,[6] and the presence of Appellant's vehicle was ordinary.

The Court also finds that one of the circumstances supporting the stop was that Appellant's vehicle was parked in a spot away from other vehicles and thus relatively secluded. But relative seclusion was never testified to. Cox testified that there were "no other vehicles around [Appellant's vehicle]."[7] Cox did not testify that Appellant's vehicle was hidden from view. Indeed, he testified that he saw Appellant's vehicle as part of his routine patrol of the park-and-ride. The Court reads more into this than is warranted by the plain testimony provided by Cox. All that is supported by this testimony is that Appellant's vehicle was parked separate from the other vehicles at the park-and-ride.

What sets Appellant's vehicle apart, then, and what the Court focuses upon, is Cox's testimony that he observed there were people inside the vehicle which was dark. The lack of lights inside the vehicle would be significant, according to the Court, because:

---

[4] Hearing on Motion to Suppress, Rep. R. vol. 1, 18.

[5] *Id.* at 27.

[6] The Court acknowledges that Appellant's vehicle was parked during the park-and-ride's normal operating hours. Majority op. at 12. This seems to have fallen by the wayside in the actual analysis.

[7] Hearing on Motion to Suppress, Rep. R. vol. 1, 18.

> One might expect to see some sort of light in the occupied vehicle, such as from a cell phone calling the ride or monitoring its progress, a CD player playing a song while the person waits, an internal light on to read a book, or the light of a smartphone occupying one's time.[8]

The Court seems to take the lack of a light as evidence that the people within are not engaged in these particular behaviors that "one might expect" from a person innocently waiting. Therefore, the lack of a light is evidence that they are not innocently waiting. In essence, Appellant was suspicious because he was not doing what "one might expect" of an innocent person.

But what "one might expect" of an innocent person is no way to judge whether a stop was supported by reasonable suspicion. So many possibilities fall within what one *might* expect that I do not think reasonable suspicion can be found simply because a person is not engaged in conduct as consistent with some specific innocent activities that "one might expect." It fails to yield a rational inference that they are engaged in any suspicious activity, let alone criminal activity.

Yet the Court does seem to deduce that the facts are more indicative of criminal activity than innocent behavior. The opinion goes on to explain the belief that darkness hides things which could include drug crimes:

> But when combined with the occupant's out-of-the ordinary presence at the park-and-ride after midnight, the relative seclusion of the vehicle suggested that the occupant or occupants were engaged in behavior that needed to be hidden from others. And the inference that behavior was being hidden was reinforced by the absence of lighting in the vehicle.

> The unusual and secretive behavior of the occupants of Appellant's vehicle at least gave rise to an objectively reasonable suspicion that some sort of crime was being committed or contemplated. Drug crimes had occurred with at least some frequency at the park-and-ride, and a dark, isolated vehicle would easily facilitate such crimes. Or such a vehicle could be a waiting spot for the commission of some other crime, such as burglarizing someone else's vehicle or burglarizing a business, such as the

---

[8] Majority op. at 13.

nearby bar. Or there might be some other unknown crime that the occupant of such a vehicle intends to commit. As we have explained, an officer does not have to pinpoint an exact penal offense. Here, the unusual and secretive nature of Appellant's behavior was sufficient to give rise to a reasonable suspicion "that something of an apparently criminal nature is brewing."[9]

From the vehicle being dark and not parked adjacent to the other vehicles, the Court sees unusual and secretive behavior. But Cox never said that the occupants of the vehicle were engaged in unusual or secretive behavior; he testified that he saw movement. Even if it could be reasonably suggested that the people inside the vehicle were engaged in something hidden and secretive simply because there was movement in a dark vehicle parked separate from other cars, I cannot make the same jump the Court does from "hidden people in the dark" to "crimes are brewing." Should every place where people are engaged in hidden—and therefore private—business be reasonably suspected of containing criminal activity such that the State has license to poke its nose inside? There was no testimony that people doing something hidden are engaging in criminal activity. There was no testimony that dark vehicles are breeding grounds for criminal activity. Nor was there testimony that lights inside a vehicle negate criminal activity. Nevertheless, the Court supposes that the occupants of the vehicle could be waiting to commit a crime, yet barely a breath earlier the Court found the lack of a light inside the vehicle to suggest that the occupants were not waiting for a ride.

It seems to me that, in order to uphold the detention in this case, the Court has to resort to stereotypes about light and dark, day and night, good and evil.

The analysis should rest, instead, on the totality of the circumstances that are in the record. The park-and-ride has some "significant association with criminal activity;" there was a vehicle parked at the park-and-ride; it was not parked adjacent to other vehicles that were also parked there;

---

[9] *Id.* at 13–14.

the vehicle's presence was neither odd nor out-of-the-ordinary; the vehicle was dark; and there were people inside. That isn't enough. As Justice Hassan's concurring opinion below pointed out, we explained in *Ceniceros*, a case in which we held there was not reasonable suspicion to detain the defendant based upon his presence in an area where crimes (in that case, burglaries) had been committed:

> The only facts the officer had at the initiation of his investigation were (1) a number of recent burglaries in the area and (2) four men standing together on a sidewalk at an intersection at 10:20 in the morning . . . . If such a suspicion were a reasonable inference from standing on a street corner in this neighborhood, all citizens passing through victimized neighborhoods would be suspects, and pedestrian checkpoints could be set up to monitor their comings and goings. Practices of this kind are repugnant to a free society. If victimization by crime becomes the justification for indiscriminate intrusion by the state, then we forfeit the security of our persons and privacy from invasion by the police on a hope of future security from the criminal, and ultimately find ourselves the displaced refugees in a raging war on crime.

*Johnson v. State*, 602 S.W.3d 50, 68 (Tex. App.—Houston [14th Dist.] 2020) (Hassan, J., concurring) (quoting *Ceniceros v. State*, 551 S.W.2d 50, 55 (Tex. Crim. App. 1977)). The same can be said about sitting in a parked car at night, which is about as worthy of suspicion as driving a clean van. *See State v. Cortez*, 543 S.W.3d 198, 201 (Tex. Crim. App. 2018) (officer testified that he began following the defendant for driving a clean van down the interstate with two people in it, which were "indicators of potential criminal activity").[10] It is certainly less suspicious than a person walking late at night in a residential area where burglaries had occurred mostly after midnight and grabbing at his

---

[10] In *Cortez*, the officer testified he stopped the clean van after observing a traffic offense, namely, unlawfully driving on the improved shoulder of the highway. *Cortez*, 543 S.W.3d at 202. This Court held that there was no reasonable suspicion to support the stop. *Id.* at 209. The evidence was unclear whether the van touched the fog line, let alone crossed it, and, even if it did, the driver of the van was statutorily permitted to do so. *Id.* at 204–08. Absent the traffic offense, the totality of the circumstances to support the stop, which did not amount to reasonable suspicion, consisted of the clean van, containing two people, driving down the interstate. *Id.* at 201–02.

waist when he saw a police car drive by, or a person walking down the street at night in a high-crime location and the officer knew the person's name and believed him to be a known criminal. *See Crain v. State*, 315 S.W.3d 43, 53 (Tex. Crim. App. 2010) (holding no reasonable suspicion); *Brodnex v. State*, 485 S.W.3d 432, 438 (Tex. Crim. App. 2016) (holding no reasonable suspicion).

In my view, not only are the circumstances innocent enough in isolation, combined they do not suggest the imminence of criminal conduct. *See Derichsweiler*, 348 S.W.3d at 914. Based upon the totality of the circumstances, there could not be a reasonable suspicion that criminal activity was imminent. The court of appeals was correct, and we should affirm that judgment. Because this Court does not, I respectfully dissent.

**A Further Note**

Having said that, what particularly troubles me is how quickly Cox decided to detain Appellant. Based upon Cox's testimony at the motion to suppress hearing, it appears that very little time elapsed between the moment Cox first saw Appellant's vehicle and the decision to initiate the stop. Certainly, reasonable suspicion can be formed almost immediately where the officer sees a patently obvious crime in progress, such as a carjacking, mugging, or hit and run. In those unequivocal circumstances, the need for patience and caution on the part of law enforcement before initiating a stop and eventual arrest is lessened.

Where the circumstances do not suggest criminal activity but are, at the most, unusual, law enforcement officers would be well-advised to follow the time-honored advice to "look before you leap." For one thing, had Cox taken an extra moment to observe and consider whether criminal activity was afoot, he could have witnessed additional circumstances, beyond merely "people in a dark vehicle," that would have actually supported the detention at issue here. There was no

immediate need to escalate the situation before getting more of the facts. There was no indication that someone was at risk of imminent death or serious bodily injury or that property was at risk of permanent, irreparable damage. The risks of letting whatever was occurring inside Appellant's vehicle continue for a few moments were slight. Cox's decision to detain Appellant, based on what appears to have been a momentary glance at the vehicle, was premature at best.

At worst, by detaining Appellant without waiting to see something specific and articulable suggesting criminal activity, it showed a cavalier disregard for the protections of the Fourth Amendment to be free from unreasonable searches and seizures. It is undeniable that police exercises of authority are under increased attention and scrutiny. While the Court finds Cox's investigative detention legal because "people in a dark vehicle" might be suspicious, a growing and increasingly vocal portion of the public might see the same investigative detention as an unnecessary escalation on the part of police. There is a greater need for patience on the part of police when they encounter circumstances that are, at the most, unusual. Whether the detention was premature or whether it represented a disregard for the Constitution, the nearly-immediate decision to detain a person sitting in a car, with no indication that the person was engaged in criminal activity other than sitting there in the dark, undermines the public trust in law enforcement and the entire justice system.

Filed: May 12, 2021
Publish