In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-02-00189-CR
______________________________


JEFFREY ALLISON ELDRIDGE, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 188th Judicial District Court
Gregg County, Texas
Trial Court No. 28916-A


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N

          Jeffrey Allison Eldridge was convicted in a jury trial for possession of a controlled
substance with intent to deliver.


 The jury assessed punishment at fifty years'
imprisonment and a $5,000.00 fine. Eldridge appeals, contending the trial court erred in
denying his motion to suppress evidence and in admitting evidence at the punishment
phase of the trial of a note allegedly written by his girlfriend. We overrule these
contentions and affirm the judgment. 
Background Facts
          The State's evidence showed that officers with the Gregg County Organized Drug
Enforcement Unit obtained a search warrant, based on information obtained from a
confidential informant, for Eldridge's mobile home located in the city of White Oak. On the
evening of the intended search, the officers conducted surveillance of Eldridge's home
before executing the warrant. During this surveillance, Eldridge left his residence in a
pickup truck and drove out of the mobile home park area. The officers followed Eldridge
for approximately three-quarters of a mile, where they stopped him, had him exit the truck,
handcuffed him, placed him in a patrol car, and transported him back to the mobile home. 
An officer drove the truck back to the mobile home. On arriving at the home, the officer
who drove the truck then used a key obtained from the key chain that was in the truck to
open the mobile home door, and the officers then conducted the search.
          On discovering marihuana on the bed in the master bedroom, Eldridge was
removed from the patrol car, patted down, and then placed back inside the patrol car. At
this point, officers observed a black bag on the floorboard of the truck matching the
description of a bag the confidential informant had stated would contain contraband. The
officers picked up the bag from the floorboard and placed it on the seat, but the bag was
not immediately searched. A search warrant for the truck was obtained, the bag was then
searched, and approximately twenty-five grams of methamphetamine was found inside. 
The search of the house revealed another black bag containing approximately twenty-five
grams of methamphetamine, a lock box containing steroids, a set of scales, a device for
passing a urinalysis test, and "Zanex" [sic] pills. The total weight of methamphetamine
found in the truck and in the house was 53.51 grams. Standard of Review
          When the trial court does not make explicit findings of historical fact in regard to a
motion to suppress, the evidence is reviewed in a light most favorable to the trial court's
ruling. Carmouche v. State, 10 S.W.3d 323, 327-28 (Tex. Crim. App. 2000). In other
words, the appellate court will assume the trial court made implicit findings of fact
supported in the record that buttress its conclusions. Id. at 328; see also Yaws v. State,
38 S.W.3d 720, 723 (Tex. App.‒Texarkana 2001, pet. ref'd). Further, the appellate court
must sustain the trial court's ruling if it is reasonably supported by the record and is correct
on any theory of law applicable to the case. Villarreal v. State, 935 S.W.2d 134, 138 (Tex.
Crim. App. 1996); Yaws, 38 S.W.3d at 723. 
Unlawful detention

          Eldridge contends the evidence found in his truck and used against him was
obtained by the officers as a result of an unreasonable detention of his person without
probable cause. He therefore contends the trial court erred in failing to suppress this
evidence as the fruit of his illegal detention. He contends his stop and detention were
unreasonable because no independent probable cause existed to believe the pickup truck
carried contraband, or that an exigency or necessity existed requiring his stop and
detention. 
          The officer who made the first contact with Eldridge after his truck was stopped was
Stuart Nipper. Nipper was also the officer who had Eldridge exit the truck, handcuffed him,
and placed him in a patrol car. Nipper testified at one point that Eldridge was under arrest
at that time, but later testified he was not under arrest.
          In Hawkins v. State, 758 S.W.2d 255, 259 (Tex. Crim. App. 1988), the Texas Court
of Criminal Appeals held that, for purposes of Article 15.22, Texas Code of Criminal
Procedure,


 the "point of arrest" occurs at the moment a person's freedom of movement
is restricted or restrained. The United States Supreme Court has held that, for the purpose
of Fourth Amendment analysis, a person has been seized "if, in view of all of the
circumstances surrounding the incident, a reasonable person would have believed that he
was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554 (1980). The
subjective intent of law enforcement officials to arrest is irrelevant unless that intent is
somehow communicated or otherwise manifested to the suspect. Dowthitt v. State, 931
S.W.2d 244, 254 (Tex. Crim. App. 1996) (citing Stansbury v. California, 511 U.S. 318, 325
(1994)). The officer's beliefs are relevant only to the extent they would affect how a
reasonable person in the situation of the individual would gauge the breadth of his or her
"freedom of action." Stansbury, 511 U.S. at 325. 
          Eldridge was restrained when he was taken from the truck, placed in handcuffs, and
placed in the back of the police car. Nipper testified at the suppression hearing Eldridge
was not free to leave at that time. Under the totality of the circumstances, this was more
than an investigatory detention. The officers stopped Eldridge pursuant to a warrant, had
him exit the truck, handcuffed him, put him in the police car, and transported him back to
the mobile home. The officer testified it was department procedure that, if narcotics were
not found in the execution of a narcotics search warrant, the individual would not be
arrested, but there is no evidence this was communicated to Eldridge. If the detention was
for the purpose of carrying out the search warrant on the mobile home, there were less
restrictive ways to ensure Eldridge's presence. In view of all the circumstances
surrounding the incident, a reasonable person would have believed he or she was not free
to leave and, therefore, the point of arrest was when the officers had Eldridge exit his truck,
handcuffed him, and placed him in the police car. See Johnson v. State, 722 S.W.2d 417,
419 (Tex. Crim. App. 1986), overruled in part on other grounds, McKenna v. State, 780
S.W.2d 797 (Tex. Crim. App. 1989); Gordon v. State, 4 S.W.3d 32, 37 (Tex. App.‒El Paso
1999, no pet.). 
          An arrest constitutes a ''seizure'' of the person arrested. California v. Hodari D., 499
U.S. 621, 627 (1991). Therefore, constitutional principles governing searches and seizures
apply to arrests. See Ceniceros v. State, 551 S.W.2d 50, 55 (Tex. Crim. App. 1977)
(op. on reh'g). The arrest in this case was constitutionally reasonable because it was
accompanied by a valid arrest warrant founded on probable cause. 
          The warrant issued was a combination arrest and search warrant based on probable
cause to stop and arrest Eldridge. A combination arrest and search warrant is valid and
common in Texas. See Tex. Code Crim. Proc. Ann. art. 18.03 (Vernon 1977);


 Pecina v.
State, 516 S.W.2d 401, 403 (Tex. Crim. App. 1974), overruled on other grounds, Madden
v. State, 644 S.W.2d 735 (Tex. Crim. App. 1983). In Pecina, 516 S.W.2d at 403, the court
found that language commanding arrest was not conditioned on whether the listed
contraband was located during the search, but whether it provided a separate and distinct
command to arrest independently of the search. The language in the Pecina warrant
provided for a search and provided that "you are commanded to arrest and bring before
me, at said place and time, the said Francisca Pecina and person or persons unknown
accused of the possession of the said narcotic drug and dangerous drug." Id. Similarly,
in Loy v. State, 502 S.W.2d 123, 124-25 (Tex. Crim. App. 1973), the court found that a
warrant which provided for a search was not conditional when in the same paragraph it
provided, "you will also arrest and bring before me, at said place and time, the said
Carmen Connie Loy accused of possessing a narcotic drug, to wit, Heroin . . . ." 
          The warrant in this case provided: "you are commanded . . . to arrest and bring
before me each suspected party named in said Affidavit." "Jeff Eldridge" was named in
the affidavit. This language is similar to the language in Pecina and Loy, and likewise was
not conditioned on whether the listed contraband was located during the search, but
provided a separate and distinct command to arrest Eldridge independently of the search.


 
           The independent command to arrest was supported by probable cause. It is
essential that an arrest warrant incorporated within a search warrant be based on probable
cause to arrest. Pecina, 516 S.W.2d at 403. A "totality-of-the-circumstances" analysis is
made to determine if there exists a substantial basis for concluding that probable cause
existed at the time of the questioned action. Illinois v. Gates, 462 U.S. 213, 230-31 (1983). 
The question is whether a reasonable, prudent, and detached magistrate could read the
affidavit in support of probable cause and believe that a crime had probably been
committed by the person in the affidavit. Diehl v. State, 698 S.W.2d 712, 714 (Tex.
App.‒Houston [1st Dist.] 1985, pet. ref'd). 
          Our determination of the sufficiency of an arrest or search warrant is limited to the
four corners of the affidavit. Oubre v. State, 542 S.W.2d 875, 877 (Tex. Crim. App. 1976). 
We interpret affidavits for arrest or search warrants, however, in a common-sense and
realistic manner. Gibbs v. State, 819 S.W.2d 821, 830 (Tex. Crim. App. 1991). The
magistrate who reviews an affidavit may draw inferences from the facts contained in it. Id.
          The affidavit in this case provided that the affiant, a police officer, was contacted by
a reliable confidential informant who observed Eldridge in possession of a quantity of
methamphetamine "within the past 72 hours." Consequently, probable cause existed that
Eldridge had committed the offense of possession of a controlled substance. Applying the
"totality of the circumstances test," and interpreting this affidavit in a common-sense and
realistic manner, and drawing reasonable inferences from the facts contained in the
affidavit, this arrest warrant was based on probable cause. Eldridge's contention that his
arrest at the time he was stopped in his truck was unreasonable and without probable
cause is without merit. Therefore, his further contention the trial court erred in failing to
suppress the evidence found in the truck as the fruit of an illegal detention is likewise
overruled. 
Movement of the truck
          Eldridge contends the search warrant for the residence did not encompass the
vehicle, and that the seizure and movement of the truck to the mobile home by the officers
without probable cause was an unreasonable search and seizure in violation of the Fourth
Amendment to the United States Constitution. Eldridge contends this seizure became
tantamount to a search when the repositioning of the vehicle led to the discovery of the
black bag. Thus, he argues, the methamphetamine found in the bag should have been
suppressed. 
          We hold that the movement of the truck to the mobile home was a lawful
impoundment of the vehicle pursuant to the community care-taking function of the officers,
as well as pursuant to a custodial arrest. In Benavides v. State, 600 S.W.2d 809, 810
(Tex. Crim. App. [Panel Op.] 1980), the Texas Court of Criminal Appeals enumerated
several instances in which the impoundment of a vehicle is lawful. One such instance
includes "[t]he authority of police to seize and impound from the streets vehicles impeding
traffic or threatening public safety and convenience . . . ." Id. at 811 (citing South Dakota
v. Opperman, 428 U.S. 364, 368 (1976)). Nipper testified the truck was partially
obstructing the roadway. 
          In addition, the court in Benavides found that a vehicle may be impounded if the
driver is removed from his or her vehicle and placed under custodial arrest and no other
alternatives are available other than impoundment to ensure the protection of the vehicle. 
Benavides, 600 S.W.2d at 811 (citing Evers v. State, 576 S.W.2d 46, 50 (Tex. Crim. App.
[Panel Op.] 1978)). As discussed above, Eldridge was under arrest, and transporting the
vehicle to the mobile home was a reasonable alternative to impoundment. The fact that
the vehicle was taken to the mobile home, not to the place where the police normally
impound vehicles, does not make the officers' conduct unreasonable. In order to remove
the obstruction to traffic and to secure the vehicle from the roadside, the action of the
police in driving the vehicle to the mobile home was less drastic than impoundment at the
regular police vehicle pound. Evers, 576 S.W.2d at 49 (holding failure to place lawfully
impounded vehicle in regular police vehicle pound not relevant). The movement of the
truck to the mobile home was therefore lawful pursuant to both the police's care-taking
function and pursuant to the custodial arrest.
Repositioning of the black bag
          Eldridge contends that the officers did not have probable cause to justify a search
of the black bag found in the truck and that the movement of the bag from the floorboard
to the seat was the underlying support for the affidavit to obtain the search warrant for the
truck. Eldridge relies on Arizona v. Hicks, 480 U.S. 321 (1987), for his position that this
movement of the bag amounted to an illegal search because the officers lacked a warrant
or probable cause. 
          In Hicks, police officers entered an apartment after a bullet had been fired through
the floor, striking a man in the apartment below, searching for the shooter, for other victims,
and for weapons. One of the officers noticed expensive stereo equipment in the
apartment. Suspecting the equipment was stolen, he recorded the serial numbers, moving
some of the equipment to do so. The officer then relayed the numbers to police
headquarters and was advised that some of the equipment was stolen property. He
immediately seized the equipment and obtained a warrant for a further search of the
apartment. The United States Supreme Court held that the officer's movement of the
equipment, even though slight in nature, amounted to a search separate and apart from
the search for the shooter, other victims, and weapons that was the lawful objective of his
entry into the apartment. Such a search was not reasonable under the Fourth Amendment
because the officer lacked probable cause.
          Hicks is distinguishable from the instant case. First, the record is not clear that, in
repositioning the black bag, the officers acquired any information they did not already have. 
Eldridge asserts the officers were able to "gain a much better view" of the bag, but fails to
identify any new information acquired in this repositioning comparable to the information
the officer in Hicks obtained in his manipulation of the stereo equipment. Second, the
officer in Hicks immediately seized the stereo equipment after learning it was stolen
property and then obtained a warrant for a further search of the premises, while here, the
officers obtained a separate search warrant for the truck before looking inside the bag. 
Finally, the movement of the bag from the floorboard of Eldridge's truck to the seat and the
ensuing search of that bag was justified as a search incident to arrest. 
          The Fourth Amendment to the United States Constitution and Article I, Section 9 of
the Texas Constitution guarantee the right of the people to be secure against unreasonable
searches of their persons, house, papers, and effects. U.S. Const. amend. IV; Tex.
Const. art. I, § 9. Warrantless searches are per se violative of the Fourth Amendment's
proscription of unreasonable searches unless they fall within one of the specifically
established exceptions. Mincey v. Arizona, 437 U.S. 385, 390 (1978). One recognized
exception to the Fourth Amendment's warrant requirement is that an officer may search
the area within the immediate control of an arrestee. Chimel v. California, 395 U.S. 752,
762-63 (1969). These searches are considered valid because of the need "to remove any
weapons that [the arrestee] might seek to use in order to resist arrest or effect his escape"
and the need to prevent the concealment or destruction of evidence. Id. at 763. The
United States Supreme Court went on to pronounce a more straightforward rule, easily
applied and predictably enforced, in United States v. Robinson, 414 U.S. 218, 235 (1973),
when it held that "in the case of a lawful custodial arrest a full search of the person is not
only an exception to the warrant requirement of the Fourth Amendment, but is also a
'reasonable' search under that Amendment." The Court rejected the suggestion that "there
must be litigated in each case the issue of whether or not there was present one of the
reasons supporting the authority for a search of the person incident to a lawful arrest." Id.
          Where the arrestee was the occupant of a vehicle, however, police had difficulty in
determining whether the passenger compartment was actually within an arrestee's reach. 
In New York v. Belton, 453 U.S. 454 (1981), the United States Supreme Court extended
the exception to include the interior of the automobile when the arrestee is its recent
occupant. The Court held that, when an officer makes a lawful custodial arrest of the
occupant of an automobile, the officer may conduct a contemporaneous search of the
passenger compartment of that automobile. Id. at 460. The Court held "that the police
may also examine the contents of any containers found within the passenger compartment,
for if the passenger compartment is within reach of the arrestee, so also will containers in
it be within his reach." Id. Belton thus defined the passenger compartment of an
automobile and containers within it as being within the hypothetical immediate control of
an occupant or recent occupant of the vehicle. The Texas courts adopted Belton in
Williams v. State, 726 S.W.2d 99, 101 (Tex. Crim. App. 1986). 
          In the case at bar, Eldridge was the driver of the pickup truck when he was arrested,
and according to Nipper's testimony, the black bag was on the floorboard of the truck in the
passenger compartment. Eldridge was, therefore, a recent occupant of the vehicle when
he was lawfully arrested, and the bag was in his immediate control. It is of no
consequence that Eldridge had been removed from the truck at the time the bag was
discovered and searched. See State v. Ballard, 987 S.W.2d 889, 891-92 (Tex. Crim. App.
1999). Nipper also testified that he drove the truck from the place of Eldridge's arrest to
the mobile home and that, at the time the black bag was discovered, no other person had
been inside the truck. 
          The repositioning of the bag was permissible under the Fourth Amendment and
Article I, Section 9 of the Texas Constitution as a search incident to Eldridge's arrest. In
addition to moving the bag onto the seat, the officers could have lawfully searched the bag
at this point. We therefore need not address Eldridge's contentions regarding defects in
the search warrant for the truck.

Probable cause to search the mobile home 
          Eldridge contends the affidavit in support of the search warrant for the mobile home
failed to demonstrate probable cause. The affidavit presented in support of the search
warrant read in relevant part as follows:
1. THERE IS IN GREGG COUNTY, TEXAS A SUSPECTED PLACE
DESCRIBED AND LOCATED AS FOLLOWS: A mobile home located at 100
N. Owens Road, in White Oak, Gregg County, Texas. The specific mobile
home to be searched is Lot Number 66. The mobile home is green and
white in color. The Mobile Home Park is named Pine Valley Mobile Home
Park. Traveling North on White Oak Road, turn left on Owens Road, travel
West and turn right on Mendy Street, continue on Mendy Street through the
curve and the mobile home will be on your left. 
 
2. THE SUSPECTED PLACE IS IN CHARGE OF AND CONTROLLED BY
EACH OF THE FOLLOWING NAMED PARTIES (HEREAFTER CALLED
"SUSPECTED PARTY" WHETHER ONE OR MORE) TO WIT: A white male
known to affiant as "Jeff Eldridge". The white male is further described as
being 5'11'' tall, and weighing approximately 190 pounds. 
 
3. IT IS THE BELIEF OF AFFIANT, AND AFFIANT HEREBY CHARGES
AND ACCUSE [sic] THAT SAID SUSPECTED PARTY HAS POSSESSION
OF, AND IS CONCEALING WITHIN SAID SUSPECTED PLACE THE
FOLLOWING DESCRIBED PERSONAL PROPERTY, TO WIT: A quantity
of methamphetamine/amphetamine kept in violation of the Texas Controlled
Substance Act.
 
4. AFFIANT HAS PROBABLE CAUSE FOR THE SAID BELIEF BY
REASON TO THE FOLLOWING FACTS, TO WIT:
 
That, Affiant is a certified peace officer employed by the Gregg County
Sheriff's Office and is currently assigned to the Gregg County Organized
Drug Enforcement Unit and has been a peace officer for over 10 years. 
 
That, Affiant was contacted by a confidential informant, who advised that
he/she had been to the location listed in paragraph one within the past 72
hours prior to the issuance of this warrant, and did at that time observe the
suspected party listed in paragraph two in possession of a quantity of
methamphetamine/amphetamine. 
 
That, Affiant believes the confidential informant's information to be true and
reliable, because the confidential informant has provided Affiant with
information in the past relating to narcotics traffic, and that information did
prove to be true and correct. 
 
That, Affiant knows that the confidential informant is familiar with the
appearance of methamphetamine/amphetamine. 
 
          Eldridge contends the above affidavit suffered from several defects, including: 
(1) its failure to show the reliability and credibility of the informant; (2) its timeliness; and
(3) its conclusory nature in regard to the location of the search and the identity of the
suspect. He contends that, because of these defects, there was no substantial basis on
which the issuing magistrate could have determined probable cause, and the evidence
from the residence should therefore have been suppressed. 
          We review the trial court's decision on a motion to suppress evidence based on a
claim that the search warrant was not supported by probable cause by applying a
bifurcated standard of review deferring to the trial court's determination of historical facts
that depend on credibility, but reviewing the trial court's application of the law of probable
cause de novo. See Burke v. State, 27 S.W.3d 651, 654 (Tex. App.‒Waco 2000, pet.
ref'd). The magistrate is confined to the four corners of the affidavit in determining whether
"there is a fair probability that contraband or evidence of a crime will be found in a
particular place." Gates, 462 U.S. at 238; see Massey v. State, 933 S.W.2d 141, 148 (Tex.
Crim. App. 1996); Burke, 27 S.W.3d at 654. In determining whether the magistrate had
a substantial basis for concluding that probable cause existed, we examine the totality of
the circumstances and accord deference to the reasonable inferences the magistrate was
entitled to draw. See Gates, 462 U.S. at 238; see also Ramos v. State, 934 S.W.2d 358,
362-63 (Tex. Crim. App. 1996); Hass v. State, 790 S.W.2d 609, 612 (Tex. Crim. App.
1990); Burke, 27 S.W.3d at 654. The totality of the circumstances includes the credibility
and reliability of both the informant and the informant's information, including the basis of
the informant's knowledge of the facts related. See Gates, 462 U.S. at 230-31. We affirm
the trial court's ruling if the ruling is reasonably supported by the record and is correct on
any theory of law applicable to the case. Roberts v. State, 963 S.W.2d 894, 903 (Tex.
App.‒Texarkana 1998, no pet.).
          Eldridge first contends the affidavit for the search warrant fails to establish the
reliability or credibility of the informant. He contends the affidavit provides no details that
make the statement credible, and the statement that the confidential informant had
provided the affiant with information in the past relating to narcotics trafficking, which
proved to be true and correct, was conclusory only. He further contends the affidavit failed
to state whether this information led to arrests, convictions, or cases being filed, and how
many times the informant had given any information or over what period of time. He also
asserts the affidavit provides no factual support for the statement the affiant knows that the
confidential informant is familiar with the appearance of methamphetamine.
          The Texas Court of Criminal Appeals has held that the affidavit in support of a
warrant to search for narcotics need not provide more specific details regarding the
informant's reliability than to state the informant had given information in the past regarding
narcotics trafficking which had proved correct. Torres v. State, 552 S.W.2d 821, 824 (Tex.
Crim. App. 1977); see also Hammond v. State, 898 S.W.2d 6, 7-8 (Tex. App.‒Dallas 1995,
no pet.). Further, because such a statement, when interpreted in a realistic and common-sense manner, indicates the informant's familiarity with controlled substances, no further
details are required to spell out the informant's qualifications in recognizing specific drugs. 
See Torres, 552 S.W.2d at 823-24; see also Palmer v. State, 614 S.W.2d 831, 832-33
(Tex. Crim. App. [Panel Op.] 1981).
          The affidavit here clearly stated that the informant had provided information in the
past relating to narcotics trafficking and that such information had proved true and correct. 
The affidavit went on to state the affiant knew the informant was familiar with the
appearance of methamphetamine. The affidavit was sufficient to provide the magistrate
with facts on which to base a determination of the informant's credibility.
          However, a finding of credibility and reliability for the information contained within
the affidavit is not enough. The information in the affidavit, found to be credible and
reliable, must provide the magistrate with a substantial basis for concluding there is a fair
probability that contraband or evidence of a crime will be found in a particular place. See
Gates, 462 U.S. at 238. To this end, the affidavit must be sufficient to determine the
timeliness of the information contained in that affidavit. See Sherlock v. State, 632 S.W.2d
604 (Tex. Crim. App. [Panel Op.] 1982) (affidavit insufficient where no information
regarding when informant's observations made); Mendiola v. State, 865 S.W.2d 540, 542
(Tex. App.‒Corpus Christi 1993, no pet.) (affidavit sufficient when it stated informant's
observation was within past seventy-two hours).
          Eldridge contends the phrase "within the past 72 hours prior to the issuance of this
warrant" fails to provide the magistrate with a meaningful basis to determine the timeliness
of the information the informant provided because the warrant could not have been issued
at the time the affidavit was being prepared and it would be impossible for the officers to
know, at the time the affidavit was being prepared, when or whether the warrant would be
issued. Several cases have found an affidavit inadequate where it fails to disclose facts
which would enable the magistrate to ascertain that the event on which probable cause
was founded occurred within a reasonable time before the affidavit was made. Jones v.
State, 579 S.W.2d 240, 242 (Tex. Crim. App. [Panel Op.] 1979); Gonzales v. State, 577
S.W.2d 226, 228 (Tex. Crim. App. [Panel Op.] 1979); Heredia v. State, 468 S.W.2d 833,
835 (Tex. Crim. App. 1971); Odom v. State, 121 Tex. Crim. 209, 50 S.W.2d 1103, 1103
(1932); Garza v. State, 120 Tex. Crim. 147, 48 S.W.2d 625, 627 (1930) (op. on reh'g). In
Garza, 48 S.W.2d at 626, the court found that: 
The affidavit for a search warrant on probable cause, based on information
and belief, should in some manner, by averment of date or otherwise, show
that the event or circumstance constituting probable cause occurred at a time
not so remote from the date of the affidavit as to render it improbable that the
alleged violation of law authorizing the search was extant at the time the
application for the search warrant was made.

It is significant that no facts or dates were disclosed in any of these cases as to when the
informant had observed the event on which probable cause was founded. 
          In this case, there is sufficient information in the affidavit to convey to a magistrate
that the informant observed Eldridge in possession of methamphetamine within a
reasonable time before the affidavit was made. The affidavit and the search warrant were
signed the same day. The magistrate, viewing the date on the affidavit, would have been
able to take that into account in interpreting the affidavit and making inferences from the
facts stated in that affidavit. He could reasonably have concluded that the confidential
informant had observed Eldridge in possession of methamphetamine to very nearly within
seventy-two hours of the affidavit, since it was the same date of the application for the
warrant. Even assuming the magistrate interpreted that statement to mean within seventy-two hours of the affidavit being signed at the furthest possible point of that day, to at most
ninety-six hours before, the affidavit provided an indication of when the informant's
observations were made, which cannot be construed as not being reasonably timely, given
the facts of the case. See Douglas v. State, 794 S.W.2d 98, 101-02 (Tex. App.‒Houston
[1st Dist.] 1990, pet. ref'd). 
          As to the contention the affidavit does not specifically show the basis of knowledge
of the identity of Eldridge or the basis of the informant's knowledge that the premises were
under Eldridge's control, the case of Gates, 462 U.S. 213, negates the necessity of a
showing of the basis of knowledge and adopts a totality of the circumstances review.
          The affidavit in this case makes clear that the basis for the informant's conclusion
was personal observation; thus, the magistrate could reasonably infer that the informant
observed the methamphetamine and the suspect in some way that, based on the relation
of one to the other, the informant concluded the methamphetamine was in the control of
the suspect.
          Reviewing the affidavit in the light of the totality of the circumstances, the
information contained in the affidavit provided the magistrate with a substantial basis for
concluding there was a fair probability that contraband would be found in the mobile home. 
Eldridge's contentions to the contrary are overruled.
Admissibility of the note
          At the punishment phase of the trial, the State offered proof of an extraneous
offense involving the possession of a controlled substance occurring October 25, 2001. 
Testimony was offered from an officer that, on October 25, 2001, Eldridge attempted to
elude the officer while driving a car. In addition, a handwritten note was admitted into
evidence that also suggested Eldridge was acting to avoid apprehension on that day. 
Nipper seized the note at Eldridge's residence October 25, 2001, and the State offered it
into evidence during Nipper's testimony. The note read as follows, "Jeff, Keith went to jail
in your truck. I believe it's your dad said they are looking for you in Keith's car. P.S. Be
careful. Everyone knows to let you know. I love you, Stephanie." Eldridge objected to the
admission of the note "unless this witness can positively identify the author of the note." 
The trial court overruled the objection. On appeal, Eldridge contends that, in addition to
its unproven authorship, the note consists of hearsay offered to prove the truth of the
matter asserted. 
          To preserve error for appellate review, the complaining party must make a timely,
specific objection. Armstrong v. State, 718 S.W.2d 686, 699 (Tex. Crim. App. 1985)
(op. on reh'g). The point of error on appeal must correspond or comport with the objection
made at trial. Dixon v. State, 2 S.W.3d 263, 273 (Tex. Crim. App. 1998) (op. on reh'g);
Thomas v. State, 723 S.W.2d 696, 700 (Tex. Crim. App. 1986). If the complaint on appeal
does not correlate to the objection made at trial, the complainant has not preserved error. 
Tex. R. App. P. 33.1(a); Dixon, 2 S.W.3d 263, 265 (Tex. Crim. App. 1998); Thomas, 723
S.W.2d at 700. In this case, Eldridge objected at trial to the unproven authorship of the
note, which is an objection to its authenticity. On appeal, Eldridge cannot complain that
it constitutes hearsay unless its admission amounts to fundamental error. 
          In the context of the admission of evidence, Texas Rule of Evidence 103(d) provides
that "[i]n a criminal case, nothing in these rules precludes taking notice of fundamental
errors affecting substantial rights although they were not brought to the attention of the
court." Tex. R. Evid. 103(d). The rule allows a reviewing court to reverse fundamental
error even in the absence of an objection. However, this exception to the rule requiring
preservation of error is rarely applied. See Miller v. State, 939 S.W.2d 681, 688 (Tex.
App.‒El Paso 1996, no pet.) (stating application of exception is "frugal"). When the error
is improper admission of evidence, it is fundamental only if the admission operates to
render the defendant's trial fundamentally unfair. See Briggs v. State, 789 S.W.2d 918,
924 (Tex. Crim. App. 1990). Preservation of error on the admission of hearsay requires
a timely and specific objection to the evidence. See Turner v. State, 805 S.W.2d 423, 431
(Tex. Crim. App. 1991). In addition, "[i]nadmissible hearsay admitted without objection
shall not be denied probative value merely because it is hearsay." Tex. R. Evid. 802. We
will therefore determine only if the note was properly authenticated, and not consider
whether the note contained inadmissible hearsay. 
          We review the trial court's decision to admit or exclude evidence under an abuse
of discretion standard. See Green v. State, 934 S.W.2d 92, 101-02 (Tex. Crim. App.
1996); Montgomery v. State, 810 S.W.2d 372, 379-80 (Tex. Crim. App. 1990). We will not
reverse a trial court whose ruling was within the "zone of reasonable disagreement." 
Green, 934 S.W.2d at 102; Montgomery, 810 S.W.2d at 391 (op. on reh'g). 
          Before a document may be admitted into evidence, it must be properly
authenticated. See Tex. R. Evid. 901(a). Rule 901(a) provides that, generally, when
authentication or identification is necessary, the requirement "is satisfied by evidence
sufficient to support a finding that the matter in question is what its proponent claims." Id. 
The Texas Rules of Evidence provide examples of authentication and identification
conforming with the requirements of the rule:
(1)Testimony of witness with knowledge. Testimony that a matter
is what it is claimed to be.
 
(2)Nonexpert opinion on handwriting. Nonexpert opinion as to the
genuineness of handwriting, based upon familiarity not acquired for purposes
of the litigation.
 
(3)Comparison by trier or expert witness. Comparison by the trier
of fact or by expert witness with specimens which have been found by the
court to be genuine.
 
(4)Distinctive characteristics and the like. Appearance, contents,
substance, internal patterns, or other distinctive characteristics, taken in
conjunction with circumstances.

Tex. R. Evid. 901(b). 

          The State did not offer expert or nonexpert testimony comparing the note with other
writings made by the purported signer. Authorship, however, can be shown
circumstantially. See Soria v. State, 933 S.W.2d 46, 60 (Tex. Crim. App. 1996) (holding
evidence that drawing found in appellant's cell sufficient connection to render drawing
relevant and permit state to make argument it was appellant's drawing). In Borak v. Bridge,
524 S.W.2d 773, 777-78 (Tex. Civ. App.‒Corpus Christi 1975, writ ref'd n.r.e.), a showing
that a writing disclosed knowledge possessed only by the purported signer was sufficient
circumstantial evidence for authentication. 
          The State presented evidence to support the finding that the note was written by the
purported signer, Stephanie. The letter was found in Eldridge's residence on the kitchen
table, taken into police custody, and marked as evidence. The letter contained the
signature of "Stephanie," and there was evidence in the record Eldridge had a girlfriend
named Stephanie. The writing, however, did not disclose knowledge possessed only by
the purported signer, and the sponsoring witness did not contend that the "Stephanie" in
the note and Eldridge's girlfriend were the same person. There were also no surrounding
circumstances that indicated Eldridge's girlfriend had the opportunity to author this note. 
Given the absence of any testimony comparing the note with other writings made by the
purported signer, and given the lack of supporting circumstances, admission of the note
was an abuse of the trial court's discretion.
          Even so, the admission of the note was harmless error. Under the Rules of
Appellate Procedure, we are to disregard errors, defects, irregularities, or variances that
do not affect substantial rights of the accused. Tex. R. App. P. 44.2(b). A "substantial
right" is affected when the error had a substantial and injurious effect or influence in
determining the jury's verdict. King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). 
If, on the record as a whole, it appears the error "did not influence the jury, or had but a
slight effect," we must conclude the error was not harmful and allow the conviction to
stand. Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). In considering
harm, the entire record must be reviewed to determine whether the error had more than
a slight influence on the verdict. See King, 953 S.W.2d at 271 (citing Kotteakos v. United
States, 328 U.S. 750, 776 (1946)); Reeves v. State, 969 S.W.2d 471, 491 (Tex.
App.‒Waco 1998, pet. ref'd). If the court finds the error did have more than a slight
influence on the verdict, it must be concluded the error affected the defendant's substantial
rights in such a way as to require a new trial. Reeves, 969 S.W.2d at 491. If the court has
grave doubts about the error's effect on the outcome, the case must be remanded for a
new trial. Id. Otherwise, the court should disregard the error. Id.; Lopez v. State, 990
S.W.2d 770, 778 (Tex. App.‒Austin 1999, no pet.).
          Eldridge claims that the admission of the note portrayed him as affirmatively
attempting to avoid capture and that this perception of deception led to a more severe
punishment from the jury. While the note portrayed Eldridge as possibly attempting to
elude capture, there was far more damaging testimony from the officer who in fact pursued
him. Officer Jason Brannon testified that he maintained surveillance on Eldridge
October 25, 2001, and that Eldridge sought to elude him by car. The officer testified
Eldridge took drastic driving measures, by speeding and taking numerous turns, to elude
the officer. This testimony was far more damaging on the issue of whether Eldridge was
attempting to elude capture October 25, 2001, than was the note. The admission of the
note was therefore harmless. 
          We affirm the judgment.



                                                                           Donald R. Ross
                                                                           Justice 

Date Submitted:      October 2, 2003
Date Decided:         October 27, 2003

Do Not Publish